CITY OF WICHITA v. WICHITA WATER CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 31, 1915.)

No. 4177.

1. EQUITY ⬤373—HEARING ON BILL AND ANSWER—ISSUES.

Where complainant sets a cause down for hearing on bill and answer, all allegations of the answer well pleaded are admitted, and only questions of law are presented for determination.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 711–713; Dec. Dig. ⬤373.]

2. WATERS AND WATER COURSES ⬤203—WATER COMPANIES—ORDINANCE GRANTING FRANCHISE—"CONTRACT."

The passage of an ordinance granting a franchise to a water company and its acceptance by the company create a "contract" under the law of Kansas, and so far as it fixes rates to be paid to the company for water it is a private contract.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289–299; Dec. Dig. ⬤203.

For other definitions, see Words and Phrases, First and Second Series, Contract.]

3. WATERS AND WATER COURSES ⬤203—WATER COMPANIES—ORDINANCE PRESCRIBING RATES—CONSTRUCTION.

Under an ordinance granting a franchise to a water company and prescribing a schedule of maximum rates to be charged by the company, in which it was provided that water for churches should be free and that rates for motors should be "special," the company cannot be required to furnish free water to churches for motors to provide power for operating organs.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289–299; Dec. Dig. ⬤203.]

4. WATERS AND WATER COURSES ⬤203—WATER COMPANIES—RIGHT TO CHARGE FOR CONNECTIONS.

In the absence of any statutory provision, or provision in the ordinance granting its franchise, on the subject, a water company may lawfully make a reasonable charge to intending consumers for extending their service pipes from the curb line and connecting them with its mains.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289–299; Dec. Dig. ⬤203.]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. WATERS AND WATER COURSES ⟐⟐203—WATER COMPANIES—CONTRACT MADE BY FRANCHISE ORDINANCE—PRACTICAL CONSTRUCTION BY PARTIES.
  Where a water company, operating under the contract made by the ordinance granting its franchise, made certain charges to consumers from the time it commenced operations, which were paid without · objection for nearly 30 years, it amounted to a practical construction of the contract by the parties acting thereunder, which should have great weight, · if its terms are of doubtful meaning with respect to the right to make such charges.

  [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289–299; Dec. Dig. ⟐⟐203.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by the City of Wichita against the Wichita Water Company and others. Decree for defendants, and complainant appeals. Affirmed.

This suit is by the city of Wichita, a municipal corporation of the state of Kansas, against the Wichita Water Company, a Delaware corporation, to restrain the latter from charging or collecting for water furnished by it to churches of the city, and from refusing to connect with its water mains the service pipes of its inhabitants who desire to be furnished · with water without the payment of charges therefor, in· alleged violation of the ordinance of the city under which the water company and its predecessors were granted the right to construct, maintain, and operate its system of waterworks within the corporate ·limits of said city. The hearing, which was upon bill and answer, resulted in a decree dismissing the bill at plaintiff's cost, and the city appeals.

Earl Blake, of Wichita, Kan. (Robert C. Foulston, of Wichita, Kan., on the brief), for appellant.

·David Smyth, of Wichita, Kan. (J. W. Smyth and Holmes & Yankey, all of Wichita, Kan., on the brief), for appellees.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

REED, District Judge (after stating the facts as above). The material allegations of the bill are that in September, 1882, the plaintiff, a city of the first class in the state of Kansas, by its Ordinance No. 266 duly passed, granted to one J. A. Jones, his associates and assigns, for the term of 40 years, the right to construct, maintain, and operate a system of waterworks within the corporate limits of said city for the purpose of supplying to the city and its inhabitants "water for domestic and sanitary purposes and for the better protection of the city against disaster from fire," and to charge and receive therefor compensation within the limit of maximum rates fixed by said ordinance; that Jones and his ·associates in interest accepted said ordinance in writing, and pursuant to its terms constructed a system of waterworks in the city, which is now owned and· operated by the defendant water company; that by said ordinance· Jones, for himself and his assigns, agreed to furnish water for the city

and its inhabitants at rates within the limits of maximum rates fixed therein; that notwithstanding such agreement, and in violation thereof, the defendant seeks to charge the various churches of the city for water, which was to be furnished free under said ordinance, and claims that said churches are not entitled to water free for running motors by which they respectively operate their church organs, and insists upon the payment of a monthly water rental as a condition precedent to the furnishing of water to operate such motors, and threatens to shut off the water from the churches refusing to pay the monthly rental on or before the 15th of each month; that plaintiff brings the suit in its own right and for and on behalf of the various churches of the city, entitled to water service free under the terms of said ordinance, to restrain further breaches thereof, and to prevent the numerous consumers of water in the city from being compelled to sue to vindicate their rights under said ordinance or submit to a small, but annoying, injustice.

As a further cause of action it is alleged, that notwithstanding the foregoing agreement, the defendant water company has failed and refused to furnish water to water consumers unless they shall submit to an "illegal and extortionate charge of $2.50" as a condition precedent to the connection of service pipes with the water mains, and still refuses to make such connection for parties desiring water without the payment of such charge as a condition precedent to making such connections and the piping of water from the mains to the property line of the property abutting on the streets on which water is desired; that the charge of $2.50, or any sum, is illegal and unwarranted by the terms of said ordinance. The prayer is that defendant be enjoined from collecting from the churches of the city for water for running motors, and from charging $2.50, or any other sum, to consumers of water for connecting service pipes with its mains, and from shutting off the water to the churches or consumers, unless such payments are made, and that it be required upon proper application to install proper connections free of charge, between its mains and the service pipes of property owners in the city desiring water, and for other relief.

The defendant water company for its answer admits the passage by the city of Ordinance No. 266 granting to Jones and his assigns the use of its streets for the purpose of constructing, maintaining, and operating in said city a system of waterworks, its acceptance by Jones and the construction by him of such a system, and that defendant now owns and operates the same, that it and its predecessors have always charged the churches of the city a monthly rental at reasonable meter rates for water to run their motors, that they have always required the consumers of water to pay for tapping the mains, connecting the service pipes therewith, and extending them to the property line of the streets in which the mains are laid, and alleges that it is not required by the ordinance to do so free of charge, and denies the authority of the city to require it to furnish water to the churches free.

Further answering the defendant alleges that it is provided by section 13 of said ordinance that the rate to be paid for water for running motors shall be "special," and that water furnished to churches for such purposes has always been charged for at reasonable meter rates, and no objection has ever been made by any of them that the amount so charged was or is unreasonable, and not until within the last six months has it been claimed that the defendant and its predecessors did not have the legal right to charge and collect from the churches for water furnished to operate motors, and such churches have always, prior to the commencement of this suit, paid without protest for water for such purposes, and during all such time the fact that said defendant and its predecessors charged and collected for water so furnished was a matter of common notoriety among the inhabitants of said city. The defendant also admits that it has charged all consumers and proposed consumers of water, as a condition precedent to furnishing them with water, a reasonable price for putting in and maintaining connections of their service pipes with the water mains and extending such pipes to the street line of the consumer's property; that such requirements have been a part of the published rules and regulations of the defendant company and its predecessors for nearly 30 years, during all of which time the water company and its predecessors have required that all such connections be made, which are necessary to the safe operation and maintenance of the system, by its agents under the supervision of its officers, to be paid for by the consumer.

[1] Except as admitted the answer denies all allegations of the bill. The plaintiff set the cause down for hearing before the court upon bill and answer, which admits all allegations of the answer well pleaded, and only questions of law are presented for determination. 1 Street's Fed. Eq. § 812 et seq.; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414.

So far as material, Ordinance No. 266 provides that, in consideration of benefits that will accrue to the city of Wichita by the construction of a system of waterworks, the city agrees to rent, and does rent, from the said J. A. Jones and assigns certain hydrants, describing them, at an annual rental of $4,000, to be paid quarterly, with the right to rent additional hydrants at the rate of $50 each per annum.

Section 13:

"That the following maximum rates shall be annual, and become a part of this franchise:

"Brewery, special;
"Churches, free;
"Candle factory, special;
"City offices, free;
"Distilleries, special;
"Fire protection, special to individuals;
"Hotels, special;
"Packing house, special;
"Printing office, special;
"Schools, free;
"Schools, fire protection, special;
"Sprinkling private garden, special, no license to exceed $20;
"Sprinkling public gardens, special;

"Sprinkling carts, special;
"Public drinking and watering fountains, to be erected by the city, free;
"Meter rates, 10,000 gallons and over per day, per 100 gallons, $0.02;
"Others, special;
"Motors, special;
"Factories not enumerated, special."

For other uses of water flat rates are fixed to be paid therefor by the consumer.

[2] The passage of this ordinance and its acceptance by Jones is a contract between them (Gen. Stats. of Kansas 1909, §§ 1030, 1031), and so far as it fixes the rates to be paid the water company for water it is a private contract. Illinois Trust & Savings Bank v. Arkansas City, 76 Fed. 271, 282, 22 C. C. A. 171, 34 L. R. A. 518. The bill alleges no violation of the ordinance so far as it may affect the city as a municipality, or that the water company does not fully comply with the requirements of the ordinance as to the sufficiency in all respects of the system, and the only violation alleged is in the price charged to the churches of the city for water to run motors with which to operate the church organs, and the price charged to consumers and proposed consumers of water for connecting their service pipes with the water mains. The answer admits the material allegations of the bill, but denies that under the terms of the ordinance the churches are entitled to the free use of water for running motors, and the authority of the city to require it to do so, or that it is required to connect the service pipes of consumers with its mains free of charge.

In argument the defendant challenges the right of the city to maintain the suit in behalf of the churches or private consumers for its alleged overcharges for the use of water and the alleged illegal charges for the connection of service pipes with the mains, and insists that the injured consumer alone can rightly maintain the suit for such matters. The trial court sustained this contention and dismissed the bill upon this ground, citing Dailey v. City of New Haven, 60 Conn. 319, 22 Atl. 945, 14 L. R. A. 69, and other cases, and declined to follow Muncie Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822. Whether or not the plaintiff city may maintain the suit for the benefit of private consumers may be a debatable question, which we deem it unnecessary to determine in this case, for, admitting, without deciding, that it may do so, it can only maintain the suit to the same extent and upon the same ground that the individual consumer, in whose behalf it is brought, could maintain the same. Its position in such case would be analogous to that of a state or the government when they respectively sue, or permit suits to be brought in their names, for some reason, in behalf of private individuals. Maryland v. Baldwin, 112 U. S. 490, 5 Sup. Ct. 278, 28 L. Ed. 822; United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121. In the last-named case the Supreme Court at page 346 of 127 U. S., at page 1088 of 8 Sup. Ct. (32 L. Ed. 121), after referring to several cases said:

"Applying these principles to this case, an inspection of the record shows that the government, though in name the complainant, is not the real contestant party to the title or property in the land in controversy. It has no interest in the suit, and has nothing to gain from the relief prayed for, and

nothing to lose if the relief is denied. The bill itself was filed in the name of the United States, and signed by the Attorney General on the petition of private individuals, and the right asserted is a private right, which might have been asserted without the intervention of the United States at all."

See, also, United States v. Winona & St. P. R. Co., 67 Fed. 969, 972, 15 C. C. A. 117.

[3] The ordinance fixes a maximum meter rate to be charged by the water company to private consumers, when used upon a meter basis, and specified flat rates when not so used, and in all other cases the rates are "special"; but for city offices, public drinking and watering fountains (to be erected by the city), and to schools and churches, there is to be no charge, except that for "fire protection" to schools and private individuals the rate is also "special." There is nothing in the ordinance to indicate that the water company shall furnish water free for other purposes than as specified in its charter. On the contrary, the schedule of rates plainly indicates that water furnished to run motors is to be furnished at "special" rates. The language is: "Churches free"; "Motors special." Such rates will, of course, depend upon the quantity of water required for motor or other "special" purposes. The quantity of water that the ordinary church would use for the purposes specified would not be great; but when a church uses water as power with which to run a motor, or for any other purpose requiring power, the quantity will depend upon the power required. Plainly the ordinance does not, either expressly or by necessary implication, require the water company to furnish water to the churches free for power purposes. In fact, section 1031 of the General Statutes of Kansas of 1909, which are a compilation of prior statutes, provides that as a condition precedent to the renewal or extension of a franchise, or the granting of an original franchise by any city of the first class to any person, company, or corporation, for furnishing water to the city and its inhabitants, an ordinance shall be passed by the council which shall state the terms, conditions, and consideration of such grant, which shall provide and require that such person or company shall during the continuance of such franchise furnish free from fire hydrants all the water that will be required for flushing gutters, sewers and other reasonable *public purposes*, except for fire protection. This statute does not authorize the city to require the water company to furnish water free, as a part of the consideration for the franchise right, except for some public purpose, and defendant insists that the provision of the ordinance requiring it to furnish water to the churches free for any purpose is unauthorized and void; but we need not determine this question, for it is sufficient to say that, if the plaintiff city desired or intended to contract with the water company for free water for the benefit of the churches of the city for all purposes, it should have made its contract accordingly. It did not do so, and it cannot rightly require the water company to furnish water to the churches for power purposes without the payment of a reasonable compensation therefor. Section 1031, Gen. Stats. Kansas 1909; Allen v. Duluth Gas & Water Co., 46 Minn. 290, 48 N. W. 1128.

The plaintiff cites and relies upon Church Society v. Ashtabula Water Co., 20 Ohio Cir. Ct. R. 578, 8 O. C. D. 648, as sustaining its contention for the free use of water to run the organs in churches; but the language of the ordinance in that case as quoted in the opinion is:

"The said grantee [the water company] shall furnish free of charge, all the water needed for use in the churches, free public schools, and other village buildings belonging to the village."

This is quite different from the ordinance in question, which provides that the rates for water for "motors" shall be a special rate, or subject to the agreement of the parties.

[4] May the water company rightly charge the consumer for the reasonable cost of connecting the service pipes with its water mains and extending them to the curb line or property abutting upon the streets in which the mains are laid? The answer to this question must also be found in the terms of the ordinance contract. The ordinance does not require the water company to connect the service pipes with its mains free of charge to consumers, and the schedule of rates only fixes the maximum price that the company may charge for water actually furnished to consumers, and so long as such maximum rate is not exceeded, and the charge for connecting the service pipes with the mains is reasonable, the ordinance is not violated. Whether or not the water company shall furnish water to a consumer, or the consumer shall receive water from the water company, is purely a matter of contract between them.

The city cites and relies upon Hatch v. Consumers' Co., 17 Idaho, 204, 104 Pac. 670, 40 L. R. A. (N. S.) 263, and cases there cited, as sustaining its contention that the obligation rests upon the water company to make the connections at its own expense. The case apparently so holds, but upon the ground, as we read the opinion, that in its prior decisions the court held that the statutes of Idaho, under which the city granted the franchise to the water company, either expressly or by necessary implication imposed upon the water company the duty of making such connections at its own expense. This being true, the acceptance by the water company of its charter would obligate it to make the connections free of charge. The case went to the Supreme Court of the United States upon the alleged ground that by the decision the water company had been denied some right guaranteed to it by the federal Constitution. The Supreme Court held that the charter of the company, as construed by the highest court of the state in connection with the statutes of the state in force at the time it was granted, imposed upon the water company the duty of making such connections at its own expense, and that the water company, having accepted the charter as so construed, was not therefore denied by the state any right guaranteed to it by the federal Constitution. The ordinance before us does not so require, nor is there any statute of Kansas or decision of its courts to which our attention has been called that so requires. In the Hatch Case the Supreme Court of Idaho recognizes that the consumer may be required by ordinance to pay the expenses of service connections when the statute so authorizes, and cites a number of cases so holding.

Municipalities, in granting franchises to or making contracts with private persons or corporations to furnish water to the city and its inhabitants, may require the water company, when the statute so authorizes, to connect the service pipes with the water mains as a part of the consideration they shall pay for the privilege of furnishing the water; but, in the absence of a charter or contract that so provides, the matter is left to the agreement of the parties.

[5] The answer of the water company affirmatively alleges that the churches of the city have always been charged by it and its predecessors for water at reasonable meter rates for running their motors, and that they have paid such charges without objection on their part until a short time prior to the commencement of this suit; also that defendant and its predecessors have always required consumers of water to pay the actual cost of tapping the mains and connecting the service pipes therewith, which amount varies from $2.50 to $5, the work to be done under its supervision; that such requirements have been a part of the published rules and regulations of the defendant company and its predecessors for nearly 30 years, and have been acquiesced in and observed by all water consumers in the city until within 6 months of the time of the commencement of this suit. This, if the contract were of doubtful meaning, would be a practical interpretation thereof by the parties acting thereunder, and of great influence in its true interpretation by the court. Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594; Insurance Co. v. Dutcher, 95 U. S. 269, 273, 24 L. Ed. 410; District of Columbia v. Gallaher, 124 U. S. 505, 510, 8 Sup. Ct. 585, 31 L. Ed. 526; Old Colony Trust Co. v. City of Omaha, 230 U. S. 100, 118, 33 Sup. Ct. 967, 57 L. Ed. 1410; Manhattan Insurance Co. v. Wright, 126 Fed. 82, 87, 61 C. C. A. 138; Uinta Tunnel Min. & Transp. Co. v. Ajax Gold Min. Co., 141 Fed. 563, 568, 73 C. C. A. 35.

We are of opinion that the churches in the city of Wichita are not entitled to the free use of water from the defendant water company for running water motors, and that the consumers of water in the city are not entitled to have their service pipes connected with the water mains and extended to the curb or property line of the streets in which the mains are laid, at the expense of the water company. The bill was therefore rightly dismissed; but it should have been upon the merits, and for the want of equity.

The decree of the district court will be modified accordingly, and, as so modified, it is affirmed.