# Birmingham W. W. Co. v. Hernandez.

### Mandamus.

(Decided January 13, 1916. Rehearing denied March 23, 1916.
71 South. 443.)

1. **Waters and Water Courses; Public Supply; Connection.**—The rule that a water company must extend the same public service without discrimination to all in like circumstances, does not require the water company to make connections for private consumers.

2. **Same.**—The charter of a water works company authorizing it to distribute water and lay pipes and make excavations through streets, alleys or public grounds, creates no duty on the company to do more than lay its mains, since it cannot compel the owner of property to take water; hence, the question whether connections for private consumers should be made at the expense of the company or the consumer, depends upon the contract between the company and the consumer.

3. **Municipal Corporations; Streets; Regulation.**—The owners of property abutting upon a city street have the right of access to it for the purpose of excavating and laying connections for water mains for similar purposes, the right being a property right, and not illegal as a private use of public property.

4. **Waters and Water Courses; Public Supply; Maintaining Service Pipes.**—The duty to maintain service pipes for supplying private consumers with water is the same as the duty to lay them, and rests upon the same party, whether company or consumer.

5. **Same; Franchises; Condition.**—In granting franchises for the furnishing of a water supply, municipalities may require the company, if so authorized by statute, to connect service pipes with their mains as part of the consideration for the transaction; but if the charter or contract does not so provide, such connections are left to the agreement of the parties.

6. **Same; Franchises; Construction.**—Ambiguous provisions in the grant of a public franchise will be construed in favor of the public.

7. **Contracts; Construction; Ambiguous Provision.**—Where there is nothing to the contrary in its language, the parties to a contract, by mutual consent, may interpret the ambiguous provisions for themselves, in which event the court will enforce the contract according to such interpretation.

8. **Waters and Water Courses; Public Supply; Private Consumers; Contracts.**—In the absence of special contract provisions, the courts will be slow to hold that a consumer of water has become bound by the acquiescence of other consumers, over whom he has no control, in a custom requiring consumers to pay for connection with water mains.

9. **Same; Franchises; Presumption.**—Where the municipal authorities contracted with a water company for a supply of water for the municipality, it will be presumed that they acted competently as the agent of all the people of the city, and that they knew the state of the matter in which they undertook to act.

10. **Same; Connection for Private Consumer.**—In the absence of a franchise provision to the contrary, the custom of a water works companay requiring private consumers to install service pipes for connection with the main, is not unreasonable, and the courts will not require such company to pay for such installation by granting a mandatory writ.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Mandamus by Robert M. Hernandez against the Birmingham Waterworks Company to compel it to install a service pipe between its main and the property line of the relator. From a decree granting the writ, respondent appeals. Reversed and remanded.

The petition alleges that relator is a resident of the city of Birmingham, and is engaged in business under the name of the Hernandez Machinery Company, conducting a machine shop at 311 South Twelfth street in the city of Birmingham, which said premises abuts on a portion of the public streets, in said city of Birmingham; that the respondent is a public service corporation, acting under a charter granted it by the Legislature of Alabama, a copy of which is set out and attached as an exhibit; and that in June, 1888, it entered into a contract with the city of Birmingham to supply the inhabitants thereof with water, and a copy of this contract is set out and made an exhibit; that relator has applied to respondent for a supply of water in his business located as above set out, and has offered and still offers to pay respondent the usual water rates, and to comply with all the reasonable rules and regulations, except as to laying or installing of service pipes, from defendant's water mains or pipes in the streets, abutting said property, to the property line of said premises; but that respondent refused, and has refused, to provide said service pipe between said line.

PERCY, BENNERS & BURR, for appellant. ROMAINE BOYD, and M. M. ULLMAN, for appellee.

SAYRE, J.—The question in this case arises out of an application by Hernandez for a writ of mandamus to compel the Birmingham Waterworks Company to lay at its expense a lateral or service pipe line from its main to the premises of the petitioner, who desires to be supplied with water.

Respondent is exercising charter powers under and by virtue of the special act of incorporation approved February 13, 1885

(Acts 1884-85, p. 415 et seq.). This charter authorized respondent "to send and distribute water throughout the said city and places adjacent thereto," and "to lay pipes for conducting its water, and to make excavations through any of the streets, alleys or public grounds of the said city of Birmingham by and with the consent of the corporate authorities of said city." This charter provided that the company should have "the right to make contracts with individuals and corporations for the water to be supplied by it, and to charge for the water to be supplied by it, and to charge for and collect such water rates and compensation therefor as may be contracted to be paid by them." Respondent is also exercising its charter powers in the city of Birmingham under an ordinance-contract with the municipal authorities into which the parties entered on June 2, 1888. This contract provided for certain maximum flat and meter rates at which water was to be furnished by respondents to domestic consumers, and contained the following stipulations, which, it is supposed, must exert some influence in the proper decision of the controversy between the parties to this cause: "The Birmingham Waterworks Company is authorized to lay down, maintain water mains, pipes, aqueducts and other fixtures to, in and through any of the streets, avenues, alleys and public grounds in said city, for the use of said city and its inhabitants, as herein provided."

"The whole of said pipe system shall be such as to cover, supply, and keep supplied all portions of streets of the city which it may be necessary to supply, and be furnished with all the necessary and usual stop gates, special castings, air valves, blow-offs, etc."

"That all hydrants provided for under this contract shall be put in by, and at the expense of said Birmingham Waterworks Company, but shall thereafter become the property of said city, and shall be kept in repair and when worn out shall be replaced with new hydrants by and at the expense of said city."

To these things respondent's answer added averments that since it had been engaged in supplying water to the city of Birmingham, uniformly, both before and after the contract of June 2, 1888, consumers had paid the cost of laying and installing the service pipe lines between their premises and its main; that before said contract it had adopted a rule or regulations to that effect which was proper, reasonable, and such an one as had been

generally maintained in cities throughout the United States, both in cases where the water supply was maintained by municipalities and as well where it was privately owned. The answer also set forth ordinances of the city of Birmingham providing that any one may make excavations in the streets for the purpose of laying service pipes on obtaining the city's permit, which is granted on the payment of a fee of one dollar and the giving of security that the street will be relaid in as good condition as it was before excavation.

The question then is, on the facts disclosed by the petition and answer, whether, on relator's application to be supplied with water, it was the duty of the respondent to lay the service pipe connecting its main with relator's premises at its own expense, or whether it might charge the cost of the work to relator.

In *State v. Birmingham Waterworks Co.*, 185 Ala. 388, 64 South. 23, this court said: "In this state it is not yet settled, and, however we might be disposed to view it, we do not regard it as a willful and culpable breach of duty by respondent to now decline to furnish such pipes at its own expense; though it is proper to say that the great weight of authority in other states seems to recognize and impose the duty in question."

At this time the question is presented for a definite answer, and we have made such shift as we could to investigate anew the original authorities and the reason of the matter.

It must be now admitted that the weight of authority, if numbers may count for weight, rests with relator's side of the controversy. Some of the cases constituting this weight of authority did not really involve the precise question here presented, and some of them appear to have been influenced to some extent by general statutory provisions; but it is safe to say that the rule for which relator contends has been substantially adopted as a rule of decision in Arkansas, California, Idaho, New Mexico, Oklahoma, and Washington, as the following cases will show: *Pine Bluff Corporation v. Toney*, 96 Ark. 345, 131 S. W. 680, Ann. Cas. 1912B, 544; *Title Guarantee & Trust Co. v. R. R. Commission*, 168 Cal. 295, 142 Pac. 878; *Hatch v. Consumers Co.*, 17 Idaho, 204, 104 Pac. 670, 40 L. R. A. (N. S.) 263; *State v. Albuquerque Water Supply Co.*, 19 N. W. 36, 140 Pac. 1059, L. R. A. 1915A, 246; *Bartlesville Water Co. v. Bartlesville* (Okl.) 150 Pac. 118; *Cleveland v. Malden Water Co.*, 69 Wash.

541, 125 Pac. 769. In Texas, the Court of Civil Appeals for the Fourth Division holds to the same doctrine.

It is not without profit to note of the foregoing line of cases that it had its origin in some language, used arguendo, in *Pocatello Water Co. v. Standley* (1900), 7 Idaho 155, 61 Pac. 518, where the question was between the water company and a plumber, not the prospective consumer, and related to the reasonableness of the company's rule by which it reserved the right to make all taps of its mains and pipes. Considering the obligations of a water supply company and construing the statute of that state, the court said: "Under the said franchise the respondent * * * is obliged to lay its mains and pipes in said streets and alleys, and deliver water to the consumers at its franchise limits, and to the line of the premises of the consumer, if such premises border on said franchise limits."

That case was cited to sustain the rule in *Hatch v. Consumers Co., supra.* This last case (*Hatch Case*) went to the Supreme Court of the United States (224 U. S. 148, 32 Sup. St. 465, 56 L. Ed. 703), and the decision of that court is cited in the brief for relator and was cited by the Supreme Court of Oklahoma as sustaining its ruling in *Bartlesville Water Co. v. Bartlesville, supra.* But the only effect of the ruling in the Supreme Court of the United States was that the judgment of the state court requiring the water company to make the service connection at its own expense impaired no constitutional right of the company which had accepted its charter in 1903, in contemplation of the duty of water companies as clearly settled by both the statute law and decisions at that time. To make the matter clear, we quote the language of the court: "The charter of the company was construed by the court below in connection with the statutes in force at the time of the construction given to those statutes in decisions made prior to such grant. We excerpt in the margin * * * a passage from the opinion in one of those cases (*Pocatello Case*). * * * That the construction thus placed upon the charter by the court below, in the light of the state of law at at the time of its adoption, did not amount to an impairment of the obligations of the charter by subsequent legislation, is, we think, too clear for anything but statement."

The idea which seems to underlie all the cases holding with relator, except as they are affected by statute or ordinance, may be fairly stated as follows: Since the franchise to furnish water

is affected with a public use, requiring all consumers to be served on equal terms, and since water companies have the right to excavate the streets, while private persons have not, the duty to lay service pipes, which involves excavations, and so the duty to deliver water on the consumer's premises, must devolve upon the water companies.

(1-5) We do not feel that we are constrained to adopt the relator's view of this case by the theory suggested nor by the cases which seem to adopt it as the reasonable foundation of their decisions. *City of Mobile v. Bienville Water Supply Co.,* 130 Ala. 384, 30 South. 445, in common with a multitude of cases, holds that the same public service must be extended to all in like circumstances and without discrimination. We fully recognize the obligation of that rule; but we are unable to see that it sheds any particular light upon the question whether, in the absence of contract or controlling statute or ordinance, the water company owes the consumer the public duty to furnish at its expense connections between its main and his premises. Respondent's charter operated, no doubt, as a general permit to excavate the streets in order to lay its mains and prepare its plant for the discharge of its public duty. But, so far as the laying of pipes and the excavation necessary thereto is concerned, in the beginning of its operations in any street, its whole right and duty was to lay its mains. It could not compel the owner of any abutting property to take water, and, as for anything to be found in respondent's charter and its contract with the city, respondent was left free to contract with consumers, subject, of course, to the general principle that all consumers in like circumstances should be treated alike and reasonably, and subject, also, to the stipulation for maximum rates. Either party may dig trenches for the laying of service pipes, subject always to reasonable municipal regulations. If it be said that to accord such right to the consumer is to permit a private use of the street, still the right to such use is but part and parcel of the right of access which cannot be taken, injured, or destroyed without compensation. To employ substantially the language of Judge Dillon, the abutting owner has a right of passage, and also other rights not shared in by the public at large, special and peculiar to himself, and arising out of the very relation of his lot to the street in front of it. These are rights of property. The private rights of abutters are not limited to the easement of light, air, and access. They

[Birmingham W. W. Co. v. Hernandez.]

are coextensive with the use to which the street may be by law devoted, and become integral parts of the estate of the abutting owner. In cities and towns the streets are commonly devoted to the conveyance of water, gas, and sewage, and the abutting owner's property is essentially dependent upon the use of the streets for connections with the appropriate means of conveyance.—3 Dillon Mun. Corp. (5th Ed.) §§ 1224-1227. In *McClaugherty v. Bluefield Waterworks Co.*, 67 W. Va. 285, 68 S. E. 28, 32 L. R. A. (N. S.) 229, the Supreme Court of West Virginia says: "The abutting owner has the right of access to his premises through the street for coal or wood or other necessary things; the right of ingress for persons; and why may we not call this right to use the street to lay his pipe for the conveyance of water a right of access constituting a property right in the street, which he may use and of which he cannot be divested?"

And that court, establishing by its decree the legal obligation of a contract by which the consumer agreed to keep his service pipe in repair, as neither lacking in consideration nor relieving a public service corporation of its duty under the law, and knowing perhaps more of the matter of fact than we do, said, in line with an averment of respondent's answer in this case, that such was the general rule in cities and towns. There can be no distinction in principle between the duty to lay service pipes and the duty to maintain them. In the *Hatch Case, supra*, which, as we have seen, turned upon the construction of a statute, the Supreme Court of Idaho recognizes that the consumer may be required by ordinance to pay the expense of service connections when a statute so authorizes, and cites some case so holding. And in *State v. Albuquerque Water Supply Co., supra*, the most elaborately argued of the cases upon which relator relies, the question being whether the property owner or the water company must defray the expenses of laying the service pipe from the main to the property line, the court said: "The answer to the question necessarily depends upon the construction to be placed upon the franchise and contract under which the water company operates, for it is clear that the contracting parties might legally stipulate that this burden should be borne by the consumer, or, on the other hand, that the public service corporation should assume it."

The first Missouri case on this question (*Fisher v. St. Joseph Water Co.*, 151 Mo. App. 530, 132 S. W. 288) follows the doctrine of some English cases and *State v. Gosnell*, 116 Wis. 606, 93 N.

W. 542, 61 L. R. A. 33. In Wisconsin the question turned upon a statute. The *Fisher Case* was followed in *Joplin v. Wheeler,* 173 Mo. App. 590, 158 S. W. 924. The reasoning of the court in the *Joplin Case* is of interest here. In the course of its opinion, the court said: "The city argues that the franchise of the company is coextensive with the entire street, and the company's obligation is to deliver water at the property line. It is obvious that the purpose for which the waterworks system is maintained, to-wit, the supplying of the inhabitants of the city with water, can be accomplished by either method. Unless we should say that the supply of water to the inhabitants necessarily means delivering it to the consumer at the very place of consumption, a position not taken by any court, and not contended for here, then the question of who should connect the water mains by service pipes with the private property was properly a matter of contract between the city and the water company, and should have been embodied in the franchise-ordinance. That the installation and maintenance of such service pipes to the property line is not one of the necessary incidents and obligations growing out of the right and duties of the water company to supply water to the inhabitants of the city is shown by the fact that this company has for 25 years discharged its duties without so doing."

The discussion need not be further protracted; but we cite some cases looking very persuasively to respondent's view, and quote a clear, and as we think a correct, statement of the law in dispute which is found in the language of REED, D. J., speaking for the United States Court of Appeals in the case of *City of Wichita v. Wichita Water Co.,* 222 Fed. 789, 138 C. C. A. 337, a very recent case, precisely in point, in which the court evidently had before it the cases cited for relator here. The court said: "Municipalities, in granting franchises to or making contracts with private persons or corporations to furnish water to the city and its inhabitants, may require the water company, when the statute so authorizes, to connect the service pipes with the water mains as a part of the consideration that shall pay for the privilege of furnishing the water; but, in the absence of a charter or contract that so provides, the matter is left to the agreement of the parties."—*Jackson v. Ellendale,* 4 N. D. 478, 61 N. W. 1030; *Vinton Water Co. v. Roanoke,* 110 Va. 661, 66 S. E. 835; *Franke v. Paducah Waterworks,* 88 Ky. 467, 11 S. W. 432, 718, 4 L. R. A. 265.

(6-10) The rule is well settled that ambiguous provisions in the grant of a public franchise will be construed in favor of the public. In this case we find nothing to the point one way or the other in either the respondent's charter or its contract with the city. On the subject in dispute both those instruments are dumb. Ordinarily, there being nothing to the contrary in the language of a contract, it is competent for the parties by mutual consent to interpret for themselves, in which event it is the duty of the court to enforce the contract according to the interpretation put upon it and practiced by both parties.—*Bixby v. Evans,* 174 Ala. 581, 57 South. 39; *City of Greenville v. Greenville Waterworks Co.,* 125 Ala. 625, 27 South. 764. On this point we have stated above the averments of the answer. So far as the alleged practice subsequent to the ordinance-contract of June 2, 1888, is concerned, if that contract had undertaken, though by doubtful expression, to determine the right of consumers in the respect at issue, or if the relator's contention, in the absence of contract, were determinable in his favor on any general principle of law, we would be slow to hold that he had been bound by the practice of the water company though acquiesced in by individual consumers, for he had no control over nor any responsibility for their actions in the premises. But different considerations may apply to the period, of what length the answer does not say, reaching from the time when respondent began to furnish water to consumers down to the contract of June 2, 1888. In making that contract the municipal authorities acted competently as the agent of all the people of Birmingham, then and thereafter, and it may reasonably be presumed to have known the state of the matter in which it undertook to act. Unfortunately it said nothing to the point in issue. At best, for relator we could only assume that there was a tacit understanding that respondent's previous practice had not been unreasonable nor unlawful, and the effect of this understanding would be strongly reinforced by any such universality of practice as is alleged in respondent's answer. We have stated the reason for our conclusion that the practice heretofore followed is not unreasonable, nor prohibited by any principle of general law or provision of statute or ordinance, and, on that consideration, without reference to the practice alleged, we hold that respondent has the legal right of the case, and hence that the trial court erred in sustaining the demurrer to respondent's answer.

[State v. Doster-Northington Drug Co.]

Relator refers to the decision of this court in *City of Montgomery v. McDade,* 180 Ala. 156, 60 South. 797. That case holds nothing to the contrary of what we have here said. It will be seen by reference to *City of Montgomery v. Greene,* 180 Ala. 322, 60 South. 900, on which in the main the decision in the *McDade Case* was based, that the holding was simply that if the city desired to have the water measured, it should furnish the meter, and that all consumers in the same class must be treated alike by the city in the territory in which its charter allows it to operate. In these cases the matter of laying service pipes was determined by ordinance-contract.

On the authority of the cases cited by relator, McQuillin and Pond, in their respective works on Municipal Corporations and Public Utilities, state the weight of authority as tt was stated in *State v. Birmingham Waterworks Co., supra;* the latter citing meter cases along with the rest. But Prof. Wyman of Harvard Law School, in his work on Public Service Corporations, after referring to the same line of cases, says: "On the other hand, there is as much authority, if not more, to the effect that the requirement by legislation or even by the regulation of the company that the consumer shall pay for his service pipe is not outrageous, as this installation is peculiarly for his benefit and no part of the general facilities of the system in the use of which all share to some degree."—Volume 1, § 824.

It results from what we have said that the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.