# CHARLESTON.

## McCLAUGHERTY *v.* WATER COMPANY.

### Decided March 22, 1910.

1. MANDAMUS—*When Granted—Compelling Water Company to Furnish Water.*

    A resident of a city may, in his own name, maintain *mandamus* against an incorporated water company to compel it to

furnish him water as required by its franchise from the city to construct and operate its works in the city.

2. WATERS AND WATER COURSES—*Rules of Water Company—Validity.*

A rule of a water corporation requiring a consumer of water to repair service pipes leading from its main pipe in a street to the property of the consumer, assented to by him, and made a part of the contract between him and the corporation, is valid, the franchise giving power to make such rule.

Petition of N. H. McClaugherty for writ of *mandamus* against the Bluefield Waterworks & Improvement Company.

*Writ Refused.*

*McClaugherty & Peters* and *Ritz & Ritz,* for petitioner.

*Sanders & Crockett* and *A. W. Reynolds,* for respondent.

BRANNON, JUDGE:

The Bluefield Water Works & Improvement Company is a corporation supplying the city of Bluefield with water. N. H. McClaugherty is a resident of that city owning a lot fronting on one of its streets. He had a contract with the water company to furnish his residence with water. He filed a petition in this Court alleging that the water company had cut off the water from his premises, and asking a *mandamus* to compel the water company to restore water to his premises. The company laid a main pipe for carriage of water along that street.

A law question of importance is raised by the water company. It is that McClaugherty as an individual cannot maintain *mandamus* to compel the performance of its duties by the water company. By no means can we accede to this proposition. Seeing that McClaugherty is peculiarly and individually interested in the performance of its public duty under the franchise granting the water company admission to the city for supplying the public with water, he must be accorded some adequate remedy for the failure of the company to do its duty to him as a resident of the city. What other effective remedy can he have? A suit for damages? That is a slow process, and does not restore the water to his premises. He needs some prompt and effective remedy that will enforce the supply of

water. We find in 26 Cyc. 401, the statement that in some jurisdictions such proceeding must be instituted by the city or a public officer, but that where a private individual has a special and peculiar interest in the enforcement of the right or the performance of the duty apart from his interest as one of the general public, he may resort to *mandamus.* This principle is obvious.. It is like that principle as to public nuisances, that an individual merely because of his right as one of the general. public cannot maintain injunction against a public nuisance; but if he lives on a road which is a means of access to his home or land, impeded by an obstruction, or is in any way peculiarly and individually interested, he can have injunction. *Pence* v. *Bryant,* 54 W. Va. 363. High; Extra. Remedies, section 433, and Farnum on Waters, section 159D, pointedly say that such an individual may enforce this right against a water company by *mandamus.* We are told that this defence of the water company can be sustained by sections 28*c.* I and 28*c.* II, chapter 47, Code of 1906. There we find that *mandamus* may be awarded at the instance of the city in its corporate name to compel a water company to perform its duty, and it is said that as the writ is there given to the municipality, that excludes the right of an individual. This cannot be conceded. The law as just stated is clear that the common law gives an individual the right to maintain *mandamus* to vindicate his right. Can it be said that this statute was designed to take away from the individual this important privilege of self protection and the enforcement of his just rights? Not with reason. What rule of construction would sustain this proposition? That citizen cannot lose such an important power without plain words from the legislature. I think that that statute is perhaps only declaratory of what would be the law without it, which would accord the city right to this writ to enforce the public right under the public franchise for public good, and that the statute·is only a precautionary declaration of the right of the city, which would exist without the statute. At any rate, we cannot hold that a remedial statute, made to make the remedy more expressive and clear in behalf of the municipality, can be construed to destroy the individual's action. Moreover; I see that said statute says that it "shall not be construed to deprive such county, city, town or village, or any inhabitant thereof, of any other

remedy to compel such individual, association or corporation to comply with the terms, conditions and agreements of such right, privilege, license or franchise, or of the right to recover damages for their failure so to do." This preserves all legal rights existing in an individual. Its intent is to save any existing right of action. We cannot say that the words "any other remedy" saves all other remedies than *mandamus* and thus takes it away. Why should the legislature be thought to have singled out that action and taken it away, and left all others? It did not mean to save only the action for damages, for that is expressly saved. The statute is remedial and must be construed as giving the city *mandamus,* and saving to individuals a like writ existing under the common law.

A leak appeared in the street in front of McClaugherty's residence. The water company sent its hands to investigate the leak, it being supposed that it might be in the main. The hands excavated and in doing so cut off the water from McClaugherty's service pipe for the purposes of investigation. They discovered that the leak was not from the main pipe, but somewhere in the service pipe connecting McClaugherty's residence with the main pipe. McClaugherty being informed of this asked the company to give him a little time and he would, make the repair. Later he informed the company that he had thought that a few inches of pipe would cure the leak, but finding out otherwise he would have nothing more to do with it. He did not demand then that the company turn on the water. Thus declining to make the repair the company allowed the water to remain cut off. Whose duty was it to cure this leak?

This water company adopted a set of rules for the conduct of its business. Among them was a rule requiring the consumer of water to put in service pipes from the main in the street to his residence, and to keep them in repair. When McClaugherty filed an application to the company to supply him with water, which application calls itself "APPLICATION AND CONTRACT OF CONSUMER", he signed that application or contract. There were two of them, each for one year. When these contracts were signed the rule requiring the consumer of water to keep the service pipe in repair was in force. That contract makes McClaugherty ask the company to supply him with water, and for the permission to make the connection and to

attach the same to the pipe of the company. Not only that, but by' that contract McClaugherty "covenants and agrees to strictly abide by the rules of the company", referring to the rules to be had at the office. This is a part of the body of the contract. These rules are posted for the open inspection of all. These two contracts signed by McClaugherty make this rule a part of his contract. If it is to govern, clearly the case is with the water company. Counsel for McClaugherty states unquestionable law when he says that "There is no question but that the respondent in a case like this has the right to adopt all such rules as it may .deem proper or necessary for the conduct of its business and it is likewise true that such rules must be reasonable ones". It is well settled that a corporation has power to make all necessary rules and regulations for its government and operation,· though such power may not be expressly conferred in its charter, in the statute of its creation or any other statute. It is regarded as a power that is included in the grant of the capacity of being a corporation. It is generally said to be an incident to a corporation. Corporate by-laws must not contravene those principles of common right embodied in the common law or its franchise or law. By-laws must operate equally upon all persons of the class which they are intended to govern. The rule must not be unreasonable, oppressive or extortionary. Now, what is there in this rule that contravenes law or public policy? Why is it not within the power of this corporation to contract with the consumer that he shall keep the service pipe in repair? Counsel says this rule is contrary to public policy. This thing of overthrowing a contract as against. public policy is a tender thing. It has been called "an unruly horse, astride of which you are carried into unknown and uncertain paths, and here that horse would be carrying us beyond all limits ever reached before, if respondent's position should meet with our approval. While contracts opposed to morality or law should not be allowed to show themselves in courts of justice, yet public policy requires and encourages the making of contracts by competent parties upon all valid and lawful considerations,· and courts so recognizing have allowed parties the widest latitude in this regard; and, unless it is entirely plain that a contract ·is violative of sound public policy, a court will never so declare. 'The power

of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt'. *Richmond* v. *Dubuque etc. R. R. Co.,* 26 Iowa, 191. 'Before a court should determine a transaction which has been entered into in good faith, stipulating for nothing that is *malum in se,* to be void as contravening the policy of the statute, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical:' *Kellogg* v. *Larkin,* 3 Pinn. 125 (56 Am. Dec. 164). 'No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people': *Swann* v. *Swann,* 21 Fed. Rep. 299". 50 Am. St. R. 19. The Supreme Court of the United States in *Baltimore Ry. Co.* v. *Voight,* 176 U. S. 198, said: "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare." I again ask why could not this company agree with McClaugherty that he should repair this service pipe, beneficial to his own use? What is there unreasonable in it? I may safely say it is the general rule in cities and towns. Counsel for McClaugherty admitting the power to make these rules, if reasonable, tells us that this particular rule operates to put upon the consumer a duty which otherwise rests on the water company. The ordinance granting the franchise puts no such duty on the company. It may be that in the absence of a contract the company would be called upon to lay and repair service pipes to the line of the consumer. For this position we are cited to *Water Co.* v. *Standley,* 61 Pac. Rep. 518. It so holds incidentally. A late Virginia case, *Vinton-Roanoke Water Co.* v. *City,* 66 S. E. 835, looks the other way. There the water company agreed as a part of its contract of franchise to furnish the city buildings and fire hydrants with water. It was held that the city must

make the service pipes to its buildings and hydrants and that the water company had fulfilled its duties when it had laid its mains along the streets. But we do not have to pass on this question of what would be the duty of the company in the absence of this contractual rule. We say the rule governs this case. This proposition is supported by *Gleasson* v. *Walkershaw*, 103 Wis. 225, and *Prindiville* v. *Jackson*, 79 Ill. 337. Counsel for McClaugherty cites us *International Water Co.* v. *City of El Paso*, 112 S. W. 816, for the proposition that it is the duty of the water company to construct its pipes to the line of the consumer's property. But that case does not help McClaugherty. It is against him. In that case there was an ordinance requiring the company to furnish water to consumers without provision as to payment for service or connecting pipes, and no rule upon the subject. The court distinctly said "the contract nowhere provides that the consumer shall pay for such work. * * * We think the failure to provide that the consumer should pay said rates and also the cost of making said connection with his property indicates that he was not to bear the cost of the latter. * * * Primarily the duty to furnish water to property owners on streets containing mains carried with it the duty to do what was necessary to be done to place the company in position to furnish the property with water. It could not do this without connecting to the property line. We think in order for the respondent to be able to claim immunity for this consequence there would have to be some provision in the grant or contract which unmistakably, or at least by fair implication, taking into consideration all the provisions bearing on the subject, would relieve it". This admits that if there had been a contract, as in this case, the consumer must furnish and repair the service pipe. To show that McClaugherty is not bound by this contract we are cited to *Rogers Park Water Co.* v. *Fergus*, 53 N. E. 363. There a party signed a contract for the supply of water in a village adjacent to Chicago contracting to pay certain rates. The village was incorporated with Chicago, and the council of Chicago passed an ordinance lowering water rates. The company claimed that the party must pay the higher rate fixed by the contract; but the Illinois court held that the rate having been lowered by law the party should only pay what others paid.

However, I notice that the application for water in that case said that it was "subject to the rules and regulations of the company now in force or hereafter to be enacted or adopted, which rules and regulations are hereby made and declared to be part of the contract" between the parties. Of course, that gave the party the right to the lower rates. The very letter of the contract demanded no more.

It is argued that the duty of making and repairing the connecting pipes rests on the company from the consideration that the individual would not have the right to dig up the street to lay his pipe without the city's permission. We cannot accede to this position. The very grant of the franchise necessarily means that the company could dig up the streets for connecting pipes, or that the consumer contracting with it for water might do so under the privilege accorded the company. When the company contracts with the consumer to furnish water that alone implies that the company makes the consumer its agent to lay the service pipe, and gives him authority to do so, else the franchise would be practically worthless. Dillon on Municipal Corporations, section 56, says that the abutting owner has a right of passage and also rights not shared in by the public at large, "special and peculiar to himself, and which arose out of the very relation to his lot to the street in front of it, and that these rights were rights of property. * * * In cities the abutting owner's property is especially dependent upon sewers, gas and water connection." The abutting owner has a right of access to his premises through the street for coal or wood or other necessary things; the right of ingress for persons; and why may we not call this right to use the street to lay his pipe for conveyance of water a right of access constituting a property right in the street, which he may use and of which he cannot be devested or denied? We recognize this full right of use of the street for the purposes of ingress and egress for all necessary purposes connected with the use of the lot in *Pence* v. *Bryant,* 54 W. Va. 263.

For these reasons we refuse the peremptory *mandamus* and dismiss the alternative *mandamus.*

ON REHEARING.

A petition for rehearing makes as its strong point that the application and contract signed by McClaugherty binding him to the company's rule that each consumer of water must furnish and repair service pipes, is invalid because without consideration. I would think that when, at the request of McClaugherty, the parties made a contract by which the water company bound itself to supply McClaugherty with water and he bound himself to buy water and pay for it, there was benefit and detriment to each contracting party, a mutuality of obligation and benefit, a mutual consideration, a part and element of which contract was the rule alluded to. The company was to make the outlay of furnishing water, a detriment to it, and get pay for it, a benefit; whilst McClaugherty was to pay, a detriment to him, and get the water, a benefit. That seems plain to me. "Anything which confers benefit on a party to whom a promise is made, or loss or inconvenience on the party promising is a valuable and sufficient consideration", is a sound definition of consideration given by Judge GREEN in *Hornbrook* v. *Lucas*, 24 W. Va. 497. "Anything that may be detrimental to the promisee or beneficial to the promisor in legal estimation will constitute good consideration for a promise". 3 Va. & W. Va. Ency. Digest 338. "A benefit to the party promising, or an injury, loss, charge, or inconvenience, or the risk thereof to the party promised", we said in *Rutherford* v. *Rutherford*, 55 W. Va. 60, citing 3 Minor's Inst. 133. "Benefit to be derived by each party to a contract furnishes a sufficient consideration for it." *Rowan & Co.* v. *Hull*, 55 W. Va. 335.

But the petition for rehearing, as an additional argument to show no consideration, puts the proposition that when this water company got its franchise it was bound by law to furnish service pipes in order to perform its public duty as a part thereof, and that the consumer was not bound to do so, and that this contract makes McClaugherty do what he was not bound to do, and relieves the company of its obligation, and is without law to support it, and is without consideration; that is to say, that this rule requiring the consumer to furnish water is against public policy as relieving an incorporated company of public service from its duty. I should think the party could

bind himself by such a contract. But a decisive answer to that proposition is found in the franchise granted to the company, which gives the company power to maintain its works and supply the city and citizens with water, "upon any terms and conditions that from time to time may be agreed upon by and between the said Bluefield Water Works & Improvement Company, its successors and assigns and the said city of Bluefield and other patrons and customers of the said Bluefield Water Works & Improvement Company." Under that clause of its franchise the company could make such rule as that involved in this case. It was thus given full authority to do so. The rule is thus binding.

*Writ Refused.*