# Richmond

HELEN SNYDER VELLINES, ADM'X, ETC. v. DELMA L. ELY.

January 13, 1947.

Record No. 3142.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Jones, Blechman & Jones,* for the appellant.

*H. R. Taylor* and *F. Lee Ford,* for the appellee.

HOLT, C. J., delivered the opinion of the court.

These matters are not in dispute:

Delma Little and Casper C. Vellines were married on November 16, 1909. On March 13, 1917, Mr. Vellines procured from the Equitable Life Assurance Society of the United States a policy in the sum of $1,000, and on April 11, 1921, he procured from it another for $1,000 and on the same day another in the sum of $4,000. In each of these policies the then wife, Delma L. Vellines, was named as beneficiary. In each of these policies this appears:

"If the right to change the beneficiary has been reserved and there is no written assignment of this policy on file with the Society, the insured may from time to time during its continuance, change the beneficiary or beneficiaries by a written request, upon the Society's blank, filed at its home office, but such change shall take effect only upon the endorsement of the same hereon by the Society."

This right was reserved.

On April 4, 1941, these policies were assigned by the

maker and beneficiary to the Citizens Marine Jefferson Bank of Newport News as collateral to secure a loan of $2,000. This debt to the bank was evidenced by a note of the insured which was not signed by his wife, although she did sign the assignment, and on the date of the death of the insured, August 1, 1943, there was a balance due thereon of $700.

This assignment has in it this stipulation:

"This assignment is made and the policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the assignee (all of which liabilities secured or to become secured are herein called 'liabilities')."

At the time of this assignment, namely, on the 4th day of April, 1941, Mr. Vellines and his wife, Delma, were living apart.

On the 21st day of July, 1943, Mr. Vellines obtained from this bank another loan of $7,000, evidenced by his bond. This new debt was also secured by deed of trust of even date, to F. O. Blechman and Leo W. Wertheimer, trustees, conveying certain real estate.

On October 31, 1942, Mr. Vellines and his wife, Delma, entered into an agreement "in settlement, adjustment and compromise of all property rights, and in consideration of the mutual promises and covenants herein contained, the parties hereto have agreed, as follows * * * "

On December 30, 1942, the trial court entered a final decree of divorce *a vinculo*. It recited that Mr. Vellines' desertion of his wife had continued for more than two years. It adopted the said compromise settlement, and further said:

"It is further adjudged, ordered and decreed that neither party to this suit shall have any interest in any property owned by the other party and that all property rights resulting from the marriage are hereby extinguished. And

further that neither party to this suit shall remarry, except that they remarry each other, for a period of six months from the entry of this order."

Mrs. Vellines married A. R. Ely on July 3, 1943, while Mr. Vellines married Helen Snyder on July 31, 1943.

On July 29, 1943, Mr. Vellines wrote and mailed this letter:

"C. C. VELLINES

GENERAL CONTRACTOR

2508 Wickham Avenue

Newport News, Va., July 29, 1943

"Equitable Life Assurance Society of U. S.
120 Broadway
New York, N. Y.

"Dear Sir:

"I wish to change the beneficiary on the policy No. 2,229,345 in the amount of one thousand (1,000) dollars, and the policy No. 2,758,634 in the amount of one thousand (1,000) dollars, and the policy No. 2,758,633 in the amount of four thousand (4,000) dollars, from Delma L. Vellines, my former wife, to my estate.

"If there is any other information you desire or forms to be signed, please forward same to me at Post Office Box 352, Newport News, Virginia.

"Yours very truly,

CASPER C. VELLINES

C. C. VELLINES"

He then appeared to be in good health and was married two days later on July 31st, at 6:30 in the afternoon. Soon thereafter he was taken ill with a heart attack and died from it a few minutes after three o'clock a. m. on the day following.

The insurance company in answer to Mr. Vellines' letter of July 29th wrote and sent to him this letter:

"THE EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED STATES
393 Seventh Avenue, New York
Thomas I. Parkinson, President

"Policy Issue and Service Department
Tel. Penn. 6-7000 Ext. 307

August 4, 1943

"Mr. Casper C. Vellines
2508 Wickham Avenue
Newport News, Virginia

"Dear Mr. Vellines:

Policies 2229, 345,    2758,633 and 634

"This is in reply to your letter dated July 29, 1943.

"These policies provide that the beneficiary may be changed by the insured if there is no assignment outstanding and on file with the Society. The records show that the policies are assigned to the Citizens Marine Jefferson Bank of Newport News, Virginia.

"The policies do not contain any provision giving the assignee, or the insured and assignee jointly, the right to change the beneficiary. This is a privilege which may be exercised by the insured alone, if there is no assignment outstanding. Under the circumstances, we shall be unable to consider a request for change of beneficiary while the assignments are outstanding.

"Yours very truly
(S)   W. G. SCHELKER
Vice President."

Of course it reached Newport News after his death.

The unconditional right of the insured to change the beneficiary is thus modified by an agreement concerning a

collateral assignment signed by Casper C. Vellines and Delma L. Vellines of date April 4, 1941:

"It is expressly agreed that the following specific rights, so long as the policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

"1. The right to collect from the insurer any disability income;

"2. The right to designate and change the beneficiary; * * * * "

The right which the insured retained to change the beneficiary after the assignment of these policies was a condition for the benefit of the insurance company which it might waive; but it not only did not waive it but insisted upon it.

By an agreement of date July 20, 1944, between the bank as assignee, Helen Snyder Vellines, as administratrix of the estate of her dead husband, and Delma L. Ely, formerly Delma L. Vellines, the divorced wife of Casper C. Vellines, deceased, the insurance company agreed to turn over to the bank the entire proceeds of these policies, subject to this provision:

"In the event litigation be commenced by either the party of the second part or the party of the third part, then the said party of the first part agrees to hold said fund subject to the order of court, and the said fund shall be received and held by the said bank and shall not be applied nor disbursed by it except by agreement of all the parties or upon final court order."

This cause turns upon the contract of settlement entered into by Mr. and Mrs. Vellines of date October 31, 1942. It reads:

"THIS AGREEMENT, made and entered into the 31st day of October, 1942, between CASPER C. VELLINES, party of the first part, and DELMA LITTLE VELLINES, his wife, party of the second part.

"WHEREAS, differences have arisen between the parties hereto on account of which a separation has occurred, which separation has continued over a period of years, and the party

of the second part on account thereof, has instituted a suit in the Corporation Court of the City of Newport News for a divorce from the bonds of matrimony, and it is now desired to adjust and settle the property rights of the said parties.

"Now, THEREFORE, in settlement, adjustment and compromise of all property rights, and in consideration of the mutual promises and covenants herein contained, the parties hereto have agreed, as follows:

"1. The party of the first part has paid unto the party of the second part the sum of Forty-five Hundred Dollars ($4,500.00) the receipt whereof is hereby acknowledged, in full settlement and discharge of any right, title or interest, including right of dower, in or to any and all real estate now owned by the party of the first part, or which may be hereafter acquired by him. The said sum also represents full settlement of any and all claims for alimony, court costs and attorneys fees in connection with the divorce proceedings; and the party of the second part further agrees that she will not incur or contract any debts on the credit of the party of the first part, and hereby releases him from any duty or obligation of furnishing her with any maintenance or support.

"2. It is mutually agreed and understood between the parties hereto that each may freely sell or otherwise dispose of his or her own property by gift, deed or will, without in any wise encumbering the rights of the other, and that each party is hereby barred from any and all rights or claims by way of dower, curtesy, inheritance, descent, distribution or in any other way arising out of said property. And each party hereto releases unto the other and to the heirs, executors, administrators and assigns thereof all claims or rights of dower, curtesy or inheritance in and to all the real estate of the other, whether *nor* owned or hereafter acquired.

"Each party also agrees, upon the request of the other, to execute and acknowledge any and all deeds of release or conveyance in order to enable such other to sell, convey or

otherwise dispose of his or her real property, free from any rights or interest of the other therein.

"Witness the following signatures and seals: * * * "

. . . . . . . . . . . . . . . . . . . . . . . . . .

■ "An agreement between spouses settling property rights will be upheld in divorce proceedings if it is fair, free from fraud, and not promotive of divorce. Such an agreement should be construed so as to give effect to the intention of the parties." 27 C. J. S., Divorce, section 301, p. 1157.

■ We look to the intention of the parties and of course to the written word.

One cannot look into the mind of another to read intentions and so these must be gathered from attendant circumstances.

These parties had been separated for two years and a final decree was at hand. It was entered on December 30, 1942. They could not remarry for six months. When that time had elapsed, each of them, with an alacrity disdaining pursuit, proceeded to marry. They must have had that in mind when the compromise settlement was reached. Mr. Vellines could not have contemplated provisions for the support of two wives, either in whole or in part; while Mrs. Vellines had in mind another husband upon whom the burden of her support would fall. It was then that they made what they considered the final settlement of their pecuniary affairs. Certainly Mr. Vellines did not expect to carry life insurance for the benefit of his divorced wife. The $4500 which he gave to her was not a gift but was paid and accepted as cancellation in full of every marital obligation. This settlement would not have been adopted by the court had it not thought it reasonable, and it did think it was reasonable and accepted it. Moreover, this was the construction which the divorce court placed upon it, for it said:

"It is further adjudged, ordered and decreed that neither party to this suit shall have any interest in any property owned by the other party and that all property rights resulting from the marriage are hereby extinguished."

Apart from all of this, the contract itself, as written, is unambiguous. This is stated as a reason for its execution:

" * * * it is now desired to adjust and settle the property rights of the said parties.

"Now, therefore, in settlement, adjustment and compromise of all *property rights* (italics supplied) and in consideration of the mutual promises and covenants herein contained, the parties hereto have agreed, as follows * * *

"2. It is mutually agreed and understood between the parties hereto that each may freely sell or otherwise dispose of his or her own property by gift, deed or will, without in any wise encumbering the rights of the other, * * * "

When this settlement was made, the cash surrender value of these policies was over $2,000. Of course his interest in them was a property right. While the wife's interest was contingent, it was also a property right. Certainly she cannot be heard to say it was not then a property right, for she is now claiming their entire proceeds.

In *Smith* v. *Coleman*, 184 Va. 259, 35 S. E. (2d) 107, 160 A. L. R. 1376, it is said:

"When an insured pays the full contract price for an insurance policy and reserves the right to change the beneficiary at will, such contract is the absolute property of the insured and he should have the same right to dispose of such property as he has to bequeath and devise his other assets, and it is hereby expressly so declared."

In *Reid* v. *Durboraw*, 272 F. 99, it is said:

"It is true that one named as beneficiary has no vested interest and is not entitled to notice of change; that the right to change a beneficiary is a property right of the assured, which in the case of insolvency the court can require him to exercise in favor of his creditors (*Cohen* v. *Samuels*, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143); that the insurer has no discretion to refuse to indorse the change of beneficiary in the policy when the insured has sent the policy to the home office with a request for the change; that equity, considering that as done which ought to be done, will treat the change as actually made when the in-

sured has done all that he could to meet the conditions for change required by the policy; that the insurer may waive performance of the conditions required for the indorsement of the change on the policy."

■ ■ Not only is the right to collect the cash surrender value of these policies a property right, but the right to change the beneficiary also is a property right. There is no doubt that the insured desired to make such a change, as is evidenced by his letter of July 29, 1943.

There is no manner of doubt about what the insured desired done, as is set out in said letter to the insurance company. If it be said that the insured, when this letter was written, thought that his former wife still had an interest in these policies, the answer is this: Notwithstanding the comprehensive terms of their compromise settlement, she still had an interest of record; and it was to make the record straight that this letter was written and to avoid any controversy thereafter or litigation such as is now before the court. Their property rights had already been settled together with a reciprocal renunciation.

The conclusions which we have reached are supported by law and good conscience.

*Reversed and remanded.*