# Richmond

LEWIS E. WALLIHAN v. ROSALIE JORDAN HUGHES.

June 21, 1954.

Record No. 4225.

Present, All the Justices.

The opinion states the case.

*Sands, Marks & Sands,* for the appellant.

*T. Nelson Parker* and *Thomas N. Parker, Jr.,* for the appellee.

MILLER, J., delivered the opinion of the court.

This appeal presents the ultimate question of what effect is to be given a decretal judgment of a court of competent jurisdiction of a sister state embodying and approving a post nuptial marriage agreement though the agreement may infringe upon the public policy of this State. The full faith and credit clause, Article IV, § 1, of the United States Constitution, the Act of Congress, 28 U. S. C. § 1738, implementing that clause, and § 8-271, Code of Virginia, 1950, declaring Virginia's policy on the effect to be given judicial proceedings of another state, are set out below.[1]

---

[1] U. S. Const., Art. IV, § 1:

"Section 1. Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

28 U. S. C. § 1738:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have

On November 8, 1952, Lewis E. Wallihan filed this suit against Rosalie Jordan Hughes and alleged that on January 4, 1952, he and defendant, who were then husband and wife and residents of Virginia, entered into a written separation agreement which is set out in the bill, the pertinent parts of which follow:

"This agreement, made this 4th day of January, 1952, by and between Lewis E. Wallihan, party of the first part, and Rosalie Jordan Wallihan, party of the second part:

### WITNESSETH

"That for and in consideration of the mutual promises and agreements hereinafter contained, the parties hereto are agreed as follows:

"1. That they can no longer live together as husband and wife.

"2. That they will hereafter live separately and apart, and each hereby relinquishes all claim to the society and consortium of the other.

"3. The party of the second part intends to proceed forthwith to effect legal proceedings in Virginia or elsewhere so as to procure a legal termination of the marriage relation heretofore existing between the parties.

"4. It is mutually agreed that the party of the first part will pay to the party of the second part in full settlement of all claims on her part against him for alimony, support money, suit money, counsel fees or costs, now or in the future, the sum of Five Thousand Dollars ($5,000.00), pay-

by law or usage in the courts of such State, Territory. or Possession from which they are taken."

Section 8-271, Code of Virginia, 1950:

"The records and judicial proceedings of any court of the United States, or of any state, or of any country subject to the jurisdiction of the United States, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice, or presiding magistrate of such court, to be attested in due form, shall have such faith and credit given to them in every court within this State, as they have in the courts of the state, territory, or district whence such records come."

able $2,500.00 on January 7, 1952, and the residue at such date as the party of the second part has obtained a valid final decree of divorce from the party of the first part.

"5. It is further mutually agreed that the party of the first part shall have the custody and control of the infant child of the parties, Nell E. Wallihan, presently aged thirteen, subject to the approval of any court of competent jurisdiction, * * *.

"6. It is further mutually agreed that the home owned and occupied by the parties, title to which is in the name of the mother of the party of the second part, Mrs. Nellie Frances Jordan, will be sold within six months from January 15, 1952, unless such time shall be extended by mutual consent, and that from the proceeds thereof the party of the first part shall receive a sum equal to all principal payments made by him on account of the purchase thereof, * * *. The party of the second part covenants that she will cause such sale to be made, as herein agreed upon, and that such payment as is herein specified will be made to the party of the first part from the proceeds thereof.

"7. The furniture in the said home shall be divided between the parties as follows:

*      *      *      *      *      *      *

(Numerous articles are here enumerated and allotted to the respective parties.)

"13. This agreement is made in an effort on the part of the parties to agree in so far as is legally possible on a settlement of their property rights, support and maintenance for the party of the second part, and other related questions, and contains nor is intended to contain any agreement contrary to law or public policy or any collusive arrangement for a termination of the marriage by consent, and in so far as possible under the law to provide for the welfare of the said child.

"14. The party of the first part agrees and covenants to support the child of the parties in accordance with his sta-

tion in life and to the best of his ability, and to secure for her such education as will accord therewith."

Complainant further alleged that on February 23, 1952, Rosalie Jordan Wallihan, now Rosalie Jordan Hughes, obtained a divorce from him, and a copy of the decree granted in the State of Nevada is made a part of the bill.

In the divorce suit Rosalie Jordan Wallihan appeared in person and by counsel, and Lewis E. Wallihan appeared by counsel and filed an answer to the bill. A factual finding of *bona fide* residence of the plaintiff in Nevada for the required statutory period is recited in the decree, and the following order and adjudication is made upon the separation agreement:

"2. That the written agreement, dated January 4, 1952, entered into between Plaintiff and Defendant, a full, true and correct copy of said agreement having been admitted in evidence and marked 'Exhibit A' be, and the same hereby is, by this Court, ratified, approved and made a part of this decree and the parties are ordered and directed to abide by all the terms and conditions thereof."

Complainant also alleged that differences had arisen between the parties as to their rights to custody of their child, and as to their rights and interests in real estate described as 4205 Hanover avenue, Richmond, Virginia. He prayed that the court determine their respective rights under the divorce decree and agreement "particularly under paragraph 5 and 6 and 14," thereof, having to do with the child's custody and the Hanover avenue property, and that he be granted general relief.

Defendant, in her answer and cross-bill, admitted execution of the agreement, that she obtained the divorce, and that the $5,000 mentioned in the agreement had been paid to her. She asserted that the contract was against public policy and void, that it had been obtained by fraud, that the real estate belonged to her mother, Nellie Frances Jordan, and that defendant was under no obligation to procure its sale and division of the proceeds, and alleged that a new

agreement as to the custody of the child had been made since her return to Virginia. She prayed that complainant be denied any relief, that custody of the child be granted to her, and that complainant be required to pay for its support.

The cause was heard upon the pleadings and the court found that the separation agreement was against public policy and void. It held and decreed as follows:

"It appearing to the court from the pleadings and the arguments of counsel that this is a suit for declaratory judgment, that the attempted agreement of separation (Exhibit B with the Bill) made by the parties hereto is void because its terms are against public policy, and that the decree of the Nevada court (Exhibit A with the Bill) approving said agreement is ineffective to alter such findings, that this action seeks to have the court declare the respective rights of the parties under said agreement and decree and that the action should therefore be dismissed, leaving only the question of the custody and support of the infant child as to which action for declaratory judgment is not an appropriate proceeding.

"THEREFORE, it is ordered that this suit be and the same is hereby dismissed, * * *."

The child has always resided in Virginia, and both litigants are now residents of Virginia, but there is no claim by either party that defendant had not acquired a *bona fide* domicile in Nevada for the required period of time when she obtained the divorce granted her by the Nevada court.

The parties concede that custody of the child is not rendered *res judicata* by the decree that confirmed the separation agreement. *Roskein* v. *Roskein*, 25 N. J. Super. 415, 96 A. (2d) 437. They agree that as to such custody the contract and decrees are subject to modification by a court of competent jurisdiction if changed conditions require modification for the best interest of the child. Change or modification of the decree, though it be of a Virginia court, may be made under such circumstances. Section 20-108,

Code of 1950; *Gloth* v. *Gloth, et al.*, 154 Va. 511, 153 S. E. 879; *Bailey* v. *Bailey*, 172 Va. 18, 200 S. E. 622; *Kern* v. *Lindsey*, 182 Va. 775, 30 S. E. (2d) 707. The full faith and credit clause does not require that we give greater force and effect in this respect to a decree of a sister state than to a decree of our court.

The dominant question is whether or not the final decree of the foreign court which ratified and confirmed the contract, and made it a part thereof, is now binding and enforceable between the parties insofar as it affects their property rights.

In her brief defendant states her position thus:

"The decree of the Nevada court is entitled to full faith and credit in the courts of this State only so far as it dissolves the marital status of the appellant and appellee. The agreement, although incorporated as a part of the Nevada decree, is not entitled to full faith and credit since it is contrary to the public policy of this State and since the Nevada court had no jurisdiction over the subject matter of the agreement."

She insists that the contract, though it be embodied in the decree, is contrary to our public policy and will not be recognized and enforced in this State. *McFarland* v. *McFarland*, 179 Va. 418, 19 S. E. (2d) 77.

A contract that is entered into before separation of the parties and which facilitates or promotes separation or divorce is void. *Cumming* v. *Cumming*, 127 Va. 16, 102 S. E. 572; *Shelton* v. *Stewart*, 193 Va. 162, 67 S. E. (2d) 841; *Arrington* v. *Arrington*, 196 Va. 86, —— S. E. (2d) ——, this day decided; 130 A. L. R. 1008; 1 *Bishop* on Marriage, Divorce and Separation, § 1261; 1 *Nelson* on Divorce and Annulment, 2d ed., § 13.22, p. 504; *Keezer*: Marriage and Divorce, 3d ed., § 249, p. 308; 6 *Williston* on Contract, rev. ed., §§ 1742, 1743, pp. 4928, 4933, and 1953 Supp., §§ 1742, 1743; 17 C. J. S., Contracts, § 235(a), p. 617; 17 Am. Jur., Divorce and Separation, §§ 14, 726, pp. 156, 546. See also *Vellines* v. *Ely*, 185 Va. 889, 41 S. E. (2d) 21.

Appellant Wallihan asserts that this contract was fair and discloses that the parties had reached the parting of their ways and that their decision to separate had been made. He says that when fairly considered under the existing facts, the contract was only intended to settle custody and property rights between parties who would not live together, and thus it was not against public policy. *Moreland* v. *Moreland*, 108 Va. 93, 60 S. E. 730; *Newman* v. *McComb*, 112 Va. 408, 71 S. E. 624; *Moore* v. *Crutchfield*, 136 Va. 20, 116 S. E. 482; *Yates* v. *Yates*, 183 Misc. 934, 51 N. Y. Supp. (2d) 135; *Hill* v. *Hill*, 23 Cal. (2d) 82, 142 P. (2d) 417; *Richards* v. *Richards*, 85 Ga. App. 605, 69 S. E. (2d) 911; 17 Am. Jur., Divorce and Separation, § 723, p. 543.

Yet even if the agreement did facilitate divorce, appellant insists that under the full faith and credit clause of the Constitution, the public policy of Virginia must yield and hence the decree embodying the contract is enforceable in this suit. It is the judgment of the foreign court that is ultimately relied upon by him.

"* * * The term 'public policy' is equivalent to 'the policy of the law.' It is applicable to the spirit as well as the letter. Whatever tends to injustice or oppression, restraint of liberty, commerce, and natural or legal right; whatever tends to the obstruction of justice, or to the violation of a statute; and whatever is against good morals, when made the object of a contract, is against public policy and therefore void and not susceptible of enforcement." 4 M. J., Contracts, § 115, p. 484.

"The meaning of the phrase 'public policy' is vague and variable; courts have not exactly defined it, and there is no fixed rule by which to determine what contracts are repugnant to it. The courts have, however, frequently approved Lord Brougham's definition of public policy as the principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. * * * The very reverse of that which is public policy at one time may become public policy at another time. Hence, no fixed

rules can be given by which to determine what is public policy." 12 Am. Jur., Contracts, § 169, p. 666.

The law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes. Public policy has its place in the law of contracts,—yet that will-o'-the-wisp of the law varies and changes with the interests, habits, need, sentiments and fashions of the day, and courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. *Brown* v. *Speyers*, 20 Gratt. (61 Va.) 296; *McClaugherty* v. *Water Co.*, 67 W. Va. 285, 289, 68 S. E. 28; 12 Am. Jur., Contracts, §§ 170, 172, pp. 667, 670.

It has been common practice in divorce suits for courts having jurisdiction of the parties to decree their rights and interests as fixed and agreed upon in a fair and equitable post nuptial contract that does not facilitate separation or divorce. That such a contract can be entered into and is binding upon the parties is generally recognized. *Roskein* v. *Roskein*, *supra.*

"From what this court has heretofore said, it is apparent that appellee cannot now, as a defense, deny the validity of the contract here involved while the divorce decree remains in full force and effect." *Davis* v. *Davis*, 229 Ind. 414, 418, 99 N. E. (2d) 77.

In Virginia at times these contracts have been approved and confirmed by reference thereto in the decree, and at times by copying the contract in the decree. Under either method the contract may by proper language, be given full decretal force and effect. *Newman* v. *McComb, supra, Vellines* v. *Ely, supra*; and *Moreland* v. *Moreland, supra.*

"We are, therefore, of the opinion that the court had the right to set forth in its decrees the agreement between the parties, as it did; to determine whether such agreement was fair and equitable, and in good faith; and upon so finding, to ratify and approve the same; and this action being within the jurisdictional powers of the court, the decrees are valid

and binding to that extent if no other." *Barnes* v. *American Fertilizer Co.*, 144 Va. 692, 714, 130 S. E. 902. See also 27 C. J. S., Divorce, § 301, p. 1157, *et seq.*

By Acts 1944, ch. 277, p. 397, § 5111, Code of 1942, was re-enacted and amended by adding, among other provisions, the following clause:

"* * * provided however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract unless such party raise objection thereto prior to entry of the decree. * * *"

That provision is now carried in section 20-109, Code of 1950, and since its enactment, the usual practice is to recite in the decree that a contract has been executed by the parties and "filed with the pleadings, depositions * * *."

We have no difficulty in concluding that the Nevada court, with both parties as they were before it, had jurisdiction and power to decree upon the contract, and that the effect of that *in personam* decree is to bind the conscience of the parties and require them to deal with the real estate in Virginia as agreed on in the contract.

In *Beebe* v. *Brownlee, et al.*, (Ohio App.) 109 N. E. (2d) 528, 110 N. E. (2d) 64, a Florida court incorporated in its decree a stipulation or agreement between the parties that had to do with all property "now jointly owned by the parties." In accordance with the agreement, the court directed that such property be granted by plaintiff to defendant. Litigation arose between the parties in the Ohio court concerning real estate owned by them in Franklin county, Ohio, and the contention was made that the "Florida court which entered the decree and judgment upon which plaintiff's first and second causes of action are predicated, was without jurisdiction to enter a judgment respecting the real estate in Franklin county, Ohio." Upon finding that the Florida court had jurisdiction of the person of the parties

and therefore upon the stipulation, it was empowered to decree as to their respective rights in the realty situate in Ohio, the court said:

"It is our opinion that the plaintiff's right to the relief sought most clearly appears upon the claim that there was a contract between the parties, as evidenced by the stipulation, which concluded their rights and accorded to the plaintiff the right to compel the defendant Dorothy Brownlee, to transfer to him any interest that she might have in the Ohio real estate." (109 N. E. (2d) 528, 530.)

We do not decide whether or not this contract as drawn would, for reasons of public policy have been unenforceable between the parties in Virginia. We take it as it comes to us—approved, ratified and held to be valid and merged into a judgment by a final decree of a court of competent jurisdiction. Whether the ruling of the Nevada court on its validity was right or wrong, there can be no question of its validity in that state. *Fauntleroy* v. *Lum*, 210 U. S. 230, 28 S. Ct. 641, 52 L. ed. 1039. The Nevada decree has bestowed upon the contract the dignity of a judgment, and it now stands upon that higher plane. *Roller* v. *Murray, et al.*, 71 W. Va. 161, 76 S. E. 172.

The assertion of a right under the full faith and credit clause of the Constitution is the assertion of a federal right, and its final determination rests with the Supreme Court of the United States.

"We assume for present purposes that petitioner's judgment for accrued alimony is not entitled to full faith and credit, if by the law of North Carolina it is subject to modification. The refusal of the Tennessee Supreme Court to give credit to that judgment because of its nature is a ruling upon a federal right, and the sufficiency of the grounds of denial is for this Court to decide." *Barber* v. *Barber*, 323 U. S. 77, 81, 65 S. Ct. 137, 89 L. ed. 82.

"The federal purpose of the clause makes this Court, for both state and federal courts, the 'final arbiter when the question is raised as to what is a permissible limitation on the

full faith and credit clause.' " *Johnson* v. *Muelberger*, 340 U. S. 581, 71 S. Ct. 474, 95 L. ed. 552.

The extent or limit of the effect of the full faith and credit clause on state court proceedings brought by the parties subsequent to the rendition of a divorce decree in a sister state is to be adjudicated by us with full regard to pronouncements on that subject by the Supreme Court of the United States. *Davis* v. *Davis*, 305 U. S. 32, 59 S. Ct. 3, 83 L. ed. 26; *Kessler* v. *Fauquier Nat'l Bank, etc.*, 195 Va. 1095, 81 S. E. (2d) 440. Determination of the effect of a public policy of one state infringed upon by the judicial proceedings of another, must be made with recognition of that fact. The limit and character of the faith and credit that must be given have been recently stated.

"The faith and credit given is not to be niggardly but generous, full." *Johnson* v. *Muelberger, supra,* at 584.

"If in its application local policy must at times be required to give way, such 'is part of the price of our federal system.' " *Sherrer* v. *Sherrer*, 334 U. S. 343, 355, 68 S. Ct. 1087, 92 L. ed. 1429. 17 Am. Jur., Divorce and Separation, § 749, p. 563; *Barber* v. *Barber, supra; Fauntleroy* v. *Lum, supra;* 29 Va. L. R. 557; 45 Col. L. R. I.

"In numerous cases this Court has held that credit must be given to the judgment of another state although the forum would not be required to entertain the suit on which the judgment was founded; that considerations of policy of the forum which would defeat a suit upon the original cause of action are not involved in a suit upon the judgment and are insufficient to defeat it." *Milwaukee County* v. *White Co.*, 296 U. S. 268, 277, 56 S. Ct. 229, 80 L. ed. 220; 12 Am. Jur., Contract, § 170; *Roller* v. *Murray, et al., supra;* 3 *Freeman* on Judgments, 5th ed., § 1399.

" 'A contract made in one state, to be performed in another, whose public policy it contravenes, need not be enforced by its courts; but the law of another state or judgment of its courts stands upon a higher footing.' *Roller* v. *Murray*, 71 W. Va. 161, 167, 76 S. E. 172. Full faith and

credit must be given to such judgment." *International Harvester Co. of Am.* v. *Solazo,* 116 W. Va. 34, 35, 178 S. E. 429.

The history and past application of the full faith and credit clause show that it was not intended to be an unrestricted and inexorable mandate to be used to subordinate or set at naught one state's sovereign powers to those of another. Its purpose is to integrate and harmonize the administration of justice under the independent legal systems of the several states, and its office is to insure certainty and order where conflict and chaos might otherwise obtain.

The policies of a state that involve its public acts, records, judicial proceedings, fundamental laws or like sovereign rights and interests do not fall within the spirit or intended purpose of the clause, and thus may not be controlled by the judicial proceedings of another state. The character of the policy relied upon by appellee to defeat appellant's claims is quite different from that having to do directly with a state's sovereign powers. It has to do with contractual rights of individuals and falls within the spirit of the full faith and credit clause and must yield to its mandate.

The case of *McFarland* v. *McFarland, supra,* relied upon by appellee, is readily distinguishable from that at bar. James M. McFarland filed suit in 1937 against his wife in Norfolk, Virginia, and sought a divorce on the ground of cruelty. In the wife's answer, she charged him with desertion and adultery. She did not ask for a divorce but prayed for separate maintenance. The husband was denied a divorce by decree of February 5, 1938, and separate maintenance was awarded the wife. The husband then established domicile in North Carolina and there instituted suit for divorce but alleged no ground arising subsequent to the Virginia adjudication. Process by publication was relied upon, and on March 19, 1941, he was granted a divorce on the ground that the parties had lived separate and apart for more than two years.

When the wife learned of the divorce, she instituted suit in Norfolk, Virginia, to have her marriage declared to be in force notwithstanding the North Carolina decree. McFarland answered and asserted that the North Carolina decree was entitled to full faith and credit, and recognition under the rule of comity. The trial court decided that the decree was "null and void," and affirmed the marriage.

We held that the decree of the trial court was technically erroneous in declaring the foreign decree "null and void" because our courts "have no jurisdiction over the judicial proceedings of another State," and thus could not alter or repeal its judgments or decrees. The trial court's decree was amended by us, and the foreign decree adjudged to be inoperative and invalid in Virginia.

The North Carolina decree was denied recognition because to give it effect would necessarily set at naught the prior Virginia decree, and thus award greater faith and credit to the foreign decree than to the decree of our court. That is neither required nor intended by Article IV, § 1, Constitution of the United States. *Hammell* v. *Britton*, 19 Cal. (2d) 72, 119 P. (2d) 333; *Kessler* v. *Fauquier Nat'l Bank, etc., supra.*

Under the construction given the full faith and credit clause by the Supreme Court of the United States in recent cases, we conclude that even though the contract may have been against our public policy, nevertheless that policy must now yield to the mandate of the full faith and credit clause.

This conclusion is fortified and made certain by § 8-271 (Virginia Code of 1950) which legislation declares our public policy in this respect and imposes upon us the obligation to give full force and effect to the "records and judicial proceedings" of the courts of other states. *Humphreys* v. *Strong*, 139 Va. 146, 123 S. E. 554.

When the parties are before a court of competent jurisdiction and a separation agreement is approved, confirmed and decreed upon, its validity is by that judgment rendered *res judicata* between the parties. The contract so made a

part of the judgment is not thereafter subject to attack by those parties in the courts of another state on the ground that it offends against the public policy of the latter state. Varying public policies as to the validity of that character of contract are put at rest by the judgment by virtue of the full faith and credit clause of the Constitution. The public policy of the latter state in such cases must yield under the mandate of the constitutional provision.

Appellee had full opportunity to challenge the contract for fraud in the Nevada court. But instead of doing so, she relied upon the contract, and sought and obtained its confirmation by the court. No extrinsic fraud is charged, and she may not now "go behind the judgment of the court" and say that the contract was secured through fraud. *Bishop* v. *Bishop* (Mo. App.), 162 S. W. (2d) 332; *Mazour* v. *Mazour*, 64 Nev. 245, 180 P. (2d) 103.

We hold that the decree of the Nevada court embodying the contract is enforceable in this state between the parties whose rights and interests were adjudicated by the Nevada court.

It is asserted by one of the litigants that Nelle Frances Jordan is interested beneficially in the real estate. If that be a fact, then the rights of all parties in the subject matter cannot be finally determined unless she be made a party to this cause. That may be accomplished in the trial court upon remand of the cause.

If differences still exist between the parties as to their rights of custody of the infant child, and their obligations to provide for her support, we see no reason why those issues may not be determined in this cause upon its reconsideration by the trial court.

For the reasons stated, the decree is reversed and the cause remanded to the trial court for further proceedings herein not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*