# CIRCUIT COURT OF SUSSEX COUNTY

Lisa Anne Dickens

v.

William Loyd Dickens

July 7, 2008

Case No. CL06-110

By Judge W. Allan Sharrett

The parties to this suit, Lisa and Loyd Dickens, were married on August 26, 1989, in Disputanta, Virginia. They separated on June 29, 2005, after seventeen years of marriage. Ms. Dickens filed a divorce action in the Circuit Court of the County of Sussex on October 30, 2006, in which she prayed for a divorce *a vinculo matrimonii* and for equitable division of the marital property. In a cross-complaint, Mr. Dickens alleged that there was a property settlement agreement, which is the subject of this suit. *See* Property Settlement Agreement (August 19, 2005). In her answer to the cross-complaint, Ms. Dickens asks this Court to set aside the property settlement agreement as void because it was signed under duress and is unconscionable.

The property settlement agreement was prepared by Mr. Dickens on the night of August 18, 2005. The following morning, he called Ms. Dickens to see if he could bring it over for her to sign it. Ms. Dickens agreed, and the

property settlement agreement was signed. The record reflects that both of the parties had discussed a property settlement agreement prior to its drafting, but Ms. Dickens had no part in the actual drafting.

After hearing the wife's evidence regarding the setting aside of the property settlement agreement, the husband made a motion to strike. A motion to strike the evidence is, in effect, a motion for summary judgment and is measured by the same standards. *Costner v. Lackey*, 223 Va. 377 (1982). When one party makes a motion to strike, the court must view the evidence in the light most favorable to the non-moving party. *Newberry v. Watts*, 116 Va. 730, 82 S.E. 703 (1914). A motion to strike should be granted when it conclusively appears that the plaintiff has proven no cause of action against the defendant. *Newton v. Veney*, 220 Va. 947, 265 S.E.2d 707 (1980). The court must view the evidence presented at trial in the manner most favorable to Ms. Dickens, the non-moving party.

"[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Derby v. Derby*, 8 Va. App. 19, 25 (1989) (quoting *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980); *see also Vellines v. Ely*, 185 Va. 889, 896, 41 S.E.2d 21, 24 (1947) ("An agreement between spouses settling property rights will be upheld in divorce proceedings if it is fair, free from fraud, and not promotive of divorce.") To prove that a contract is invalid on the grounds that there was fraud or duress or that it is unconscionable, "the one contesting the contract must prove the allegations by clear and convincing evidence." *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); *Gill v. Gill*, 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979). Here, the burden is on Ms. Dickens to prove that fraud or duress was present or that the property settlement agreement was unconscionable.

"Historically, a bargain was unconscionable in an action at law if it was 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other'." *Derby*, 8 Va. App. at 28 (1989) (quoting *Restatement (Second) of Contracts*, § 208, comment b (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889))). "Courts cannot relieve one of the consequences of a contract merely because it was unwise. 'They are not guardians in general to the people at large but where inadequacy of price is such as to shock their conscience, equity is alert to seize upon the slightest circumstance indicative of fraud, either actual or constructive'." *Derby*, 8 Va. App. at 30 (1989) (quoting *Owens v. Owens*, 196 Va. 966, 974, 86 S.E.2d 181, 186 (1955) (quoting *Jackson v. Seymour*, 193 Va. 735, 741, 71 S.E. 181, 185 (1952))).

When a court attempts to determine whether or not an agreement should be set aside because it is unconscionable, it must examine the "adequacy of price" or "quality of value." *Drewry v. Drewry*, 8 Va. App. 460, 472, 383 S.E.2d 12, 18 (1989). "If a 'gross disparity in the value exchanged' exists then the court should consider 'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable'." *Id.* (quoting *Derby*, 8 Va. App. at 28, 378 S.E.2d at 79). In order to prove that the property settlement agreement is unconscionable, then, Ms. Dickens must satisfy this two-prong test set forth in *Derby*.

It is unclear from the record that there is a disparity between the property that each party received pursuant to the agreement. Mr. Dickens received all the marital realty, a 55 acre and a 7 acre tract of land. However, he inherited the 55 acre tract, and no marital monies were ever paid on it. While this tract was titled in both names, the Virginia Court of Appeals has repeatedly held that family history and inheritance are significant factors to be weighed when determining the division of realty. *See Dye v. Dye*, 1996 WL 57931 (Va. App. 1996); *Hammer v. Hammer*, 1993 WL 90313 (Va. App. 1993); *Bonner v. Bonner*, 1993 WL 311345 (Va. App. 1993). Additionally, the seven-acre tract is heavily encumbered and may have little equity. He also received all of the farm equipment and all of the Anthem stock. Mr. Dickens also testified that he had not discussed the values of the real property or the farming equipment with his wife prior to entering into the property settlement agreement. The wife received two vehicles, a 1999 Mercury Sable and a 1993 GMC truck, and one half of the Citizen's National Bank of Windsor stock. Each party was allowed to claim one of the children as a dependent for tax purposes.

"If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. *Derby*, 8 Va. App. at 28 (quoting *Smyth Bros. v. Beresford*, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920)). Even if a disparity exists in this case, it does not rise to the level required by *Smyth Bros.*, and does not allow the court to infer duress by oppressive behavior. Ms. Dickens testified that she understood what she owned. "[E]very person . . . is entitled to dispose of [his] property, in such a manner and upon such terms as he chooses, and whether his bargains are wise, or discreet, or profitable, or unprofitable or otherwise, are considerations not for courts of justice, but for the party himself to deliberate upon." *Smyth Bros.*, 128 Va. at 170, 104 S.E. at 382.

Even if there is a gross disparity, however, Ms. Dickens has failed to carry her burden to prove the second *Derby* prong, that of undue or oppressive influence. "When a court considers whether a contract is unconscionable . . . [and it has found that] a gross disparity in the value exchanged exists, then the

court should consider 'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable'." *Drewry*, 8 Va. App. at 472 (quoting *Derby*, 8 Va. App. at 28). Ms. Dickens claims that her husband coerced her to sign the agreement through oppressive means and that she signed the agreement out of duress. The facts, however, do not lead to that conclusion. Mr. Dickens did not appear unannounced at Ms. Dickens' home; he called, stated his purpose, asked if he might come over, and she gave him permission to do so. While it may have been inconvenient to receive him at eight o'clock in the morning, Ms. Dickens neither voiced an objection, nor told him not to come. She did not flee the premises or call the police in the twenty minutes before Mr. Dickens arrived. Rather, as she testified, she waited for him.

Ms. Dickens described her husband's demeanor on his arrival as "very friendly." He appeared "happy," but was "rushing," and "wanted to get it done, get it behind us." He did not appear to have been drinking, and was neither cursing nor threatening. While Ms. Dickens reported verbal abuse during the marriage, she acknowledged that Mr. Dickens had never physically abused either her children or her. She did answer "yes" in response to the question, "Were you afraid?" However, nothing in the record gives any indicia of fear on her behalf. There was not, and never had been, a protective order in effect. She had never initiated criminal charges against her husband, and he never assaulted or battered her. Nothing suggests any intimidation of any sort on the day the agreement was signed.

While the wife was under a psychiatrist's care for depression, she had been so for about ten years, and had not experienced any acute episode at any time proximate to the execution of the agreement. "The law presumes that every adult party who executes an agreement is mentally competent to enter into a contract." *Drewry*, 8 Va. App. at 467 (citing *Chesapeake & Ohio Ry. v. Mosby*, 93 Va. 93, 94, 24 S.E. 916, 916 (1896)). "A party may rebut that presumption by proof that when the person executed the agreement he or she lacked the capacity to understand the nature and consequences of the transaction." *Id.* (citing *Lohman v. Sherwood*, 181 Va. 594, 607, 26 S.E.2d 74, 79-80 (1943)). Further, "[s]evere mental depression does not itself render a person legally incompetent. *Id.* at 469 (citing *DiPietro v. DiPietro*, 10 Ohio App. 3d 44, 460 N.E.2d 657 (1983). Ms. Dickens' depression is a factor to consider, but it does not warrant a finding that the property settlement agreement was unconscionable and thus unenforceable. She wanted the separation, and initiated it by leaving the marital home with the children. They were apparently ensconced in suitable housing, and she remained employed; the children continued to attend school.

Neither side had counsel advising them about property issues; the agreement is clearly the product of a layperson. Ms. Dickens understood the nature and extent of the parties' property. She knew the 55 acre tract had been inherited by Mr. Dickens. She was also aware that there was little or no equity in the 7 acre tract with the marital home. She never asked for time to take the agreement to an attorney. She received it only briefly, for about ten minutes, discussed several items with Mr. Dickens, then signed it.

There is nothing to suggest that Mr. Dickens engaged in deception, overreaching, duress, concealment, or misrepresentation in securing Ms. Dickens' signature to the agreement. He did not surprise, threaten, intimidate, or coerce her into executing it. Whether or not it was wise of her to do so is another matter. However, "courts cannot relieve one of the consequences of a contract merely because it was unwise." *Owens, supra,* at 30.

It is clear from the record, then, when viewed in a light most favorable to Ms. Dickens, that she has not met her burden of proving the two-prong test of unconscionability set forth in *Derby*. Because she has not met this burden, the Court grants Mr. Dickens' motion to strike.