PRESENT:  All the Justices

HELEN MARIE TAYLOR, ET AL.

                                                                     OPINION BY

v.  Record No. 210113                     JUSTICE S. BERNARD GOODWYN
                                                     September 2, 2021

RALPH S. NORTHAM, ET AL.

FROM THE CIRCUIT COURT OF RICHMOND CITY
W. Reilly Marchant, Judge

In this appeal, we consider whether language in an 1890 deed, signed by the then Governor of Virginia, and an 1889 joint resolution of the General Assembly, which requested and authorized the Governor to sign such deed, prohibit the Governor of Virginia from ordering the removal of a state-owned monument from state-owned property.

BACKGROUND

On July 15, 1887, the heirs of William C. Allen (the Allen heirs) conveyed by deed (the 1887 Deed) to the Lee Monument Association a round piece of property (the Circle) located at the intersection of Monument Avenue and Allen Avenue, which is now in the City of Richmond, Virginia.  The terms of the 1887 Deed required the grantee, the Lee Monument Association, to use the Circle as a site for a monument to Confederate General Robert E. Lee (General Lee), and required the Lee Monument Association to hold the Circle "only for the said use."  Several months later, the Lee Monument Association commissioned an equestrian statue of General Lee and a pedestal (together, the Lee Monument) to be erected on the Circle.

On December 19, 1889, the General Assembly passed a joint resolution (the 1889 Joint Resolution), authorizing and requesting the Governor at the time, P.W. McKinney (Governor McKinney), to accept the donative transfer of the ownership of the Circle and the Lee Monument from the Lee Monument Association to the Commonwealth of Virginia (the Commonwealth).  In the 1889 Joint Resolution, the General Assembly expressed its opinion that the Lee Monument

Association proposed "the most graceful and appropriate disposition of the equestrian statue of General Robert E. Lee [and land on which it is to be placed]" as a gift to the Commonwealth; and "whereas this patriotic purpose is highly appreciated and approved by the General Assembly," it resolved to request and authorize the Governor to accept the gift and to give the guarantee "of the state that it will hold the said [Lee Monument] perpetually sacred to the monumental purpose to which it has been devoted."

On March 17, 1890, upon the completion of the Lee Monument, the Lee Monument Association executed a deed (the 1890 Deed) conveying ownership of the Lee Monument and the Circle to the Commonwealth. Governor McKinney, who was also the president of the Lee Monument Association at the time, signed the 1890 Deed on behalf of both the Commonwealth and the Lee Monument Association. The Allen heirs also signed the 1890 Deed.

The 1890 Deed states that

> The State of Virginia, party of the third part acting by and through the Governor of the Commonwealth and pursuant to the terms and provisions of the [1889 Joint Resolution] executes this instrument in token of her acceptance of the gift and of her guarantee that she will hold [the Lee Monument and the Circle] perpetually sacred to the Monumental purpose to which they have been devoted and that she will faithfully guard it and affectionately protect it.

The 1890 Deed also included a plat depicting the intended subdivision of the area surrounding the Circle along Monument Avenue and Allen Avenue.

In 2020, the Commonwealth experienced an apparent rise in negative public sentiment concerning the Lee Monument and other Confederate monuments, which was evidenced by civil rights demonstrations and protests, as well as by damage being done to the Lee Monument and other Confederate monuments.

On June 4, 2020, Governor Ralph S. Northam (Governor Northam) held a press conference, at which he announced his intention to have the Lee Monument removed from the

2

Circle on Monument Avenue. Governor Northam thereafter directed and approved a Department of General Services' plan to remove the Lee Monument from the Circle.

In response to Governor Northam's actions, on July 21, 2020, Helen Marie Taylor (Taylor), John-Lawrence Smith (Smith), Janet Heltzel (Heltzel), George D. Hostetler (Hostetler), and Evan Morgan Massey (Massey) (collectively, the Taylor Plaintiffs) filed a complaint in the Circuit Court for the City of Richmond, seeking declaratory relief, preliminary injunctive relief, and permanent injunctive relief against Governor Northam, Director Joe Damico of the Virginia Department of General Services, and Director W. Michael Coppa of the Virginia Division of Engineering and Building (collectively, the Governor). With the exception of Massey, the Taylor Plaintiffs are owners of properties located on a portion of Monument Avenue that has officially been designated as a National Historic Landmark District (the Historic District). Massey is the trustee for an owner of property located in the Historic District. The properties in which Heltzel, Hostetler, and Massey (collectively, the Allen heirs' successors) hold an interest are on the plat that is depicted in the 1890 Deed.

In their complaint, the Taylor Plaintiffs contend that Governor Northam has no authority to remove the Lee Monument because the 1889 Joint Resolution binds him to perpetually maintain the Lee Monument on the Circle. They argue that Governor Northam's order violates the Constitution of Virginia because his violation of the 1889 Joint Resolution encroaches upon the legislature's powers, violates the doctrine of separation of powers, and defies the Commonwealth's current public policy as expressed in the 1889 Joint Resolution. Additionally, the Taylor Plaintiffs assert a property right to enforce the 1887 Deed and the 1890 Deed, which they claim requires the Commonwealth to perpetually maintain the Lee Monument on the Circle.

3

Finally, they aver that removing the Lee Monument would violate Code § 2.2-2402(B),[1] which they contend prohibits the removal of state-owned structures like the Lee Monument.

In response to the complaint, the Governor filed a demurrer, asserting that the complaint fails to state a cause of action because Governor Northam, as the current Governor of Virginia, has the authority to order the removal of the Lee Monument from the Circle. The Governor also contends, in the demurrer, that the language in the 1887 Deed and the 1890 Deed which purportedly restricts the Commonwealth's use of the property given to it, is mere precatory language, and thus the language in the 1887 Deed and the 1890 Deed is not sufficient to create an enforceable property right (restrictive covenant) as alleged by the Taylor Plaintiffs. Further, the Governor claims that, even if the language of the 1890 Deed creates a restrictive covenant, as the Taylor Plaintiffs contend, that covenant is unenforceable because it violates public policy in that the Commonwealth cannot be forced, in perpetuity, "to engage in expression with which it disagrees." Moreover, the Governor avers that "a compulsory [governmental] message violates public policy, regardless of its content" and is therefore unenforceable, and also that Code § 2.2-2402 does not provide a private right of action.

After a hearing on the matter, the circuit court granted the Taylor Plaintiffs' request for a temporary injunction and enjoined the Governor from removing the Lee Monument from the Circle during the pendency of the case.

On August 25, 2020, the circuit court overruled the Governor's demurrer as to the Taylor Plaintiffs' claims that Governor Northam's actions were in violation of the Constitution of Virginia. Concerning the Taylor Plaintiffs' claims that the 1887 Deed and the 1890 Deed

---

[1] Code § 2.2-2402(B) prohibits the removal of state-owned structures, located on state-owned property, that are intended primarily for memorial purposes and which were funded from the state treasury, unless particular procedural steps are followed.

4

contain enforceable restrictive covenants, the circuit court overruled the demurrer as to the Allen heirs' successors' claims but sustained the demurrer as to the other Taylor Plaintiffs (Taylor and Smith), who were not successors of the Allen heirs. The circuit court sustained the demurrer with respect to the Taylor Plaintiffs' claims under Code § 2.2-2402, finding that the statute does not provide a private right of action.

The Governor subsequently filed an answer, which asserted that the Taylor Plaintiffs were not entitled to the relief requested and raised the following affirmative defenses: that the Taylor Plaintiffs' claims are barred by sovereign immunity, that they lack standing, that they failed to state a claim upon which relief could be granted, that they have no enforceable property right, that any covenant or obligation to keep the Lee Monument in perpetuity violates public policy, and that the Taylor Plaintiffs' claims fail due to changed circumstances and lack of consideration.

In October 2020, while the instant suit was still pending before the circuit court, the General Assembly passed House Budget Bill 5005 and Senate Budget Bill 5015 (collectively, the 2020 Budget Amendment). The enrolled version of the 2020 Budget Amendment states that, "Notwithstanding the provisions of [the 1889 Joint Resolution], which is hereby repealed, the Department of General Services, in accordance with the direction and instruction of the Governor, shall remove and store the Robert E. Lee Monument or any part thereof."[2]

On October 9, 2020, the Taylor Plaintiffs filed a motion for summary judgment claiming that the 1889 Joint Resolution and the 1890 Deed entitled them to judgment as a matter of law. The Governor filed an opposition to the motion, arguing that the 2020 Budget Amendment

_____

[2] On November 18, 2020, Governor Northam signed the 2020 Budget Amendment as Chapter 56 of the 2020 Acts of Assembly, an act to amend and reenact Chapter 1289 of the 2020 Acts of Assembly, which appropriated funds for the 2020-22 biennium.

eviscerates the Taylor Plaintiffs' constitutional claims by making it "indisputably clear" that the public policy of today's Commonwealth not only supports, but also dictates the Lee Monument's removal. The Governor also filed a cross motion for summary judgment.

On October 19, 2020, the circuit court heard the parties' arguments on their motions for summary judgment and took the matters under advisement, prior to proceeding with a bench trial of the case.

The Taylor Plaintiffs' case-in-chief at trial consisted of two title reports for the properties owned by the Allen heirs' successors.

At the end of the Taylor Plaintiffs' case-in-chief, the Governor moved to strike the Taylor Plaintiffs' claims. The Governor argued that the Taylor Plaintiffs lacked standing to bring their claims that the Governor violated the Constitution of Virginia, both as a matter of law and due to their failure to offer any evidence to establish standing. The Governor asserted that the Taylor Plaintiffs' constitutional claims were "a thinly disguised argument" that Governor Northam violated the 1889 Joint Resolution, and that such claims fail as a matter of law, because the 1889 Joint Resolution imposes no legal obligation on the Governor of Virginia. The Governor also averred that Governor Northam's order did not violate the 1889 Joint Resolution and that the 1890 Deed did not create an enforceable restrictive covenant because requiring the Commonwealth to maintain a Confederate monument in place "until the end of time" violates current public policy.

The Taylor Plaintiffs responded that the 1889 Joint Resolution binds the Governor because the 2020 Budget Amendment is unconstitutional and cannot amend or repeal the public policy expressed in the 1889 Joint Resolution. They reasoned that, because the 1889 Joint Resolution has not been expressly repealed or amended, the public policy expressed in the 1889

6

Joint Resolution specifically articulates the current public policy of the Commonwealth, as a matter of law.

Taking the motion to strike under advisement, the circuit court directed the Governor to proceed in presenting evidence.

The Governor presented two expert witnesses, Dr. Edward L. Ayers (Dr. Ayers) and Dr. Kevin Gaines (Dr. Gaines), who testified concerning the historical background regarding the erection of the Lee Monument, as well as the recent social impetus to remove the Lee Monument and other Confederate monuments. The witnesses testified that, in 1890, the Lee Monument was erected as a monument to the Confederacy's "Lost Cause" and as a memorial to the southern white citizenry's continued belief in and defense of their pre-Civil War way of life, which included the practices of slavery and the subjugation of persons of African descent. Dr. Ayers testified that John Mitchell, an African American man who was one of Richmond City's council members in 1890, abstained from voting on the Lee Monument matter because he did not want to be complicit in its erection.[3] Dr. Ayers added that John Mitchell was also the editor for the Richmond Planet, which was the African American newspaper that was circulated in 1890, and he stated that John Mitchell wrote and published an article pronouncing the South's reverence of the "memory of its chieftains" as an act that "serves to retard its progress in the country and forge heavier chains with which to be bound." Dr. Gaines attested that, in the 130 years that followed the erection of the Lee Monument, the emerging public consensus viewed Confederate monuments as a "troubling presence" in contemporary society because many believe that honoring the Confederacy through public monuments is tantamount to revering the

_____

[3] In 1902, Virginia passed a new state constitution which was specifically designed to disenfranchise African American voters, and which effectively did so with grim efficiency for half a century. *See* Brief of A.E. Dick Howard as *Amicus Curiae* 30.

Confederacy's defense of the institution of slavery. Dr. Gaines testified that the Lee Monument, in particular, has become associated with a message that many believe contradicts the values of equality, inclusion, and diversity.

The Governor also asked the circuit court to take judicial notice of the 2020 Budget Amendment, which the circuit court did, without objection from the Taylor Plaintiffs. The circuit court also took judicial notice of the following facts:

1. That 2020 Spec. Sess. I Va. Acts of Assembly Chapter 4 was enacted and approved, thereby amending Code § 2.2-3300 to establish Juneteenth as a holiday "to commemorate the announcement of the abolition of slavery . . . and to recognize the significant roles and many contributions of African Americans to the Commonwealth and the [N]ation;"

2. That 2020 Sess. Va. Acts of Assembly Chapter 418 was enacted and approved, thereby amending Code § 2.2-3300 to eliminate the state holiday "honor[ing] Robert E. Lee," as a defender of the cause;

3. "That on July 24, 2020[,] the General Assembly-created Commission charged with considering replacing the Lee statue in the U.S. Capitol voted unanimously in favor of its removal;"

4. "That in July 2020, the Speaker of the House of Delegates ordered the removal of a lifesized statue of Lee and seven busts depicting other ex-Confederates from the Capitol's Old House Chamber;"

5. "That during June 2020, protestors toppled one Confederate monument in the City of Richmond;" and

6. "That during July 2020, the City of Richmond removed three Confederate monuments along Monument Avenue."

At the conclusion of the Governor's case-in-chief, the Taylor Plaintiffs presented rebuttal testimony from an expert witness who testified that the Historic District was a recognized National Historical Landmark and an archivist who identified an 1890 newspaper article in which it was noted that a "colored" Confederate soldier attended the unveiling ceremony for the Lee Monument.

8

On October 27, 2020, the circuit court issued a letter opinion. In the letter opinion, the circuit court primarily addressed the Taylor Plaintiffs' restrictive covenant claims. The circuit court noted that our Court has long held that in order for a restrictive covenant to be enforceable, it must not be contrary to public policy nor should the conditions have so radically changed as to practically destroy the original purposes of the covenant. It stated that "[g]iven that law, and given that burden of proof, the issue becomes whether the Governor put forward 'clear and certain' evidence to support its position that enforcement of the restrictive covenants would be against public policy, and/or evidence that conditions have so radically changed that enforcement would no longer be in accord with the law." Recognizing that the Governor bore the burden of establishing that the restrictive covenants were not enforceable, the circuit court concluded that the Governor had done so.

In considering and weighing the evidence presented by both parties, the circuit court noted "the lack of any evidence from the [Taylor Plaintiffs] on the issue of the public policy of the Commonwealth, other than the 1889 Joint Resolution and the 1887 and 1890 [D]eed[s]." On the other hand, the Governor's evidence included testimonies of the Governor's expert witnesses and evidence regarding more recent legislative enactments of the General Assembly.

Regarding Dr. Ayers' and Dr. Gaines' expert testimony, the circuit court stated that "their testimony overwhelmingly established the need of the southern citizenry to establish a monument to their 'Lost Cause,' and to some extent their whole way of life, including slavery." Their testimony described "a post-war South where the white citizenry wanted to impose and state unapologetically their continued belief in the validity and the honor of their 'Lost Cause,' and thereby vindicate their way of life and their former Confederacy."

9

The circuit court stated that the Governor's most significant evidence of current public policy is the 2020 Budget Amendment, which specifically repealed the 1889 Joint Resolution, and ordered the Lee Monument to be moved from the Circle. The circuit court repudiated and rejected the Taylor Plaintiffs' claims that the 2020 Budget Amendment was somehow unconstitutional.

Even though the circuit court found that the language in the 1887 Deed and the 1890 Deed creates restrictive covenants, it concluded that these restrictive covenants are unenforceable because enforcement of the restrictive covenants would violate current public policy of the Commonwealth. Additionally, the circuit court held that the Governor's actions seeking to remove the Lee Monument did not contradict public policy, and thus those actions did not violate the Constitution of Virginia. The circuit court entered a final order consistent with its opinion in favor of the Governor, and it dissolved the temporary injunction that it previously entered.

On October 29, 2020, the Taylor Plaintiffs appealed the circuit court's decision. On October 30, 2020, the circuit court entered an order *sua sponte* restoring its temporary injunction order and extending it to cover the entire pendency of the Taylor Plaintiffs' appeal.

We granted six assignments of error:

1. The circuit court erred as a matter of law in concluding that enforcement of the restrictive covenants in the 1887 and 1890 Deeds would be contrary to current public policy as established by the Virginia General Assembly in its 2020 special session because the Budget Amendment on which the circuit court relied for that conclusion is special legislation that grants relief in this case in violation of Article IV, § 14 of the Constitution of Virginia and, therefore, cannot establish the public policy of the Commonwealth.

2. In denying Plaintiffs' motion for summary judgment and dissolving the temporary injunction, the circuit court erred as a matter of law by declining to rule on Plaintiffs' contention that the Budget Amendment violates the prohibition against impairment of the obligation of contracts in Article I, § 11, Clause 2 of the Constitution of Virginia and Article I, § 10, Clause 1 of the United States Constitution and, therefore, it cannot establish the public policy of the Commonwealth.

10

3. The circuit court erred as a matter of law in concluding that enforcement of the restrictive covenants in the 1887 and 1890 Deeds would be contrary to current public policy as established by the Virginia General Assembly in its 2020 special session because the Budget Amendment on which the circuit court relied for that conclusion violates the separation-of-powers provisions in Article I, § 5 and Article III, § 1 of the Constitution of Virginia and, therefore, cannot establish the public policy of the Commonwealth.

4. In denying Plaintiffs' motion for summary judgment and dissolving the temporary injunction, the circuit court erred as a matter of law by declining to rule on Plaintiffs' contention that the Budget Amendment violates the rule established by this Court that a legislative act generally cannot abrogate a valid restrictive covenant unless it is demanded by the public health, comfort or welfare and, therefore, it cannot establish the public policy of the Commonwealth.

5. The circuit court erred as a matter of law in declining to grant summary judgment to Plaintiffs because there was no material fact in dispute and Plaintiffs had established the grounds in law and fact for a grant of summary judgment in their favor.

6. In denying Plaintiffs' motion for summary judgment and dissolving the temporary injunction, the circuit court abused its discretion by declining to consider and rule on Plaintiffs' contention that invalidation of the restrictive covenants in the 1887 and 1890 Deeds would be contrary to the public policy of the Commonwealth regarding historic preservation, as expressed in Article XI, §§ 1 & 2 of the Constitution of Virginia, as implemented by the Virginia General Assembly in Code of Virginia §§ 10.1-1700 et seq., 10.1-2202.3, 10.1-2205, 10.1-2206.1, 10.1-2206.2, 10.1-2207 and 10.1-2212.

ANALYSIS

The Taylor Plaintiffs claim that the circuit court should not have considered the 2020 Budget Amendment in reaching its conclusion that the provisions of the purported restrictive covenants violate the public policy of the Commonwealth and are unenforceable. They also claim that the circuit court should have granted summary judgment to them, as a matter of law, because the 1889 Joint Resolution conclusively articulates the current public policy in Virginia and is binding on the current Governor, and the restrictive covenants in the 1887 Deed and the 1890 Deed are therefore enforceable against the Commonwealth. The Taylor Plaintiffs additionally claim that the circuit court did not consider their argument concerning the Commonwealth's public policy regarding historic preservation.

11

The Taylor Plaintiffs' claims are based upon two premises.  First, that they have an enforceable property interest which allows them to prohibit the Commonwealth from moving a monument owned by the Commonwealth from property that is likewise owned by the Commonwealth.  Second, that the Governor is constitutionally prohibited from ordering the removal of the Lee Monument from the Circle because a joint resolution passed by the General Assembly in 1889 states the Commonwealth's current public policy and it strips the Governor of his authority to have the Lee Monument moved from the Circle.  Rightfully, neither premise survived the circuit court's scrutiny.

The role of a court in our system of Government is to resolve cases based on the law.  Here, the legal questions on which the case pivots are whether a specific disfavored property right, a restrictive covenant (assuming that is what the language of the 1887 and 1890 Deeds create), is reasonable and enforceable when it purports to bind the government to perpetually maintain and protect a particular monument, and whether a joint resolution passed by the General Assembly in 1889 legally prohibits the current Governor from moving the location of a monument owned by the Commonwealth.

We conclude that there is sufficient evidence to support the circuit court's ruling that the purported restrictive covenants are unenforceable, even without considering the 2020 Budget Amendment, and that the terms of the 1889 Joint Resolution are not binding on the current Governor and did not strip the Governor of his authority to order the removal of the Lee Monument from the Circle.  Therefore, we will affirm the judgment of the circuit court.

<u>A.</u>

"Permanent monuments displayed on public property typically represent government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009).  This form of government

speech includes "privately financed and donated monuments that the government accepts and displays to the public on government land." *Id.* at 470-71. The Lee Monument does not express in words a particular message beyond the word "Lee," inscribed upon it, but like other monuments on government land, it "play[s] an important role in defining the identity that [the government] projects to its [own] residents and to the outside world." *Id.* at 472. The authorized presence of the Lee Monument on public property is indisputably government speech made on behalf of the Commonwealth.

Government speech is a vital power of the Commonwealth, the democratic exercise of which is essential to the welfare of our organized society. Indeed, it would be difficult to imagine a government that could function absent this freedom. *Id.* at 468. "A government entity has the right to speak for itself [; it] is entitled to say what it wishes, and to select the views that it wants to express." *Id.* at 467-68 (internal citations, alterations, and quotation marks omitted). Thus, the Commonwealth has the inherent power to place or remove monuments on its property.

Government speech does not need to be viewpoint neutral because the Free Speech Clause checks the government's regulation of private speech, but it does not regulate government speech. *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017); *Pleasant Grove City*, 555 U.S. at 467. Inevitably, "government will adopt and pursue programs and policies [that may be] contrary to the profound beliefs and sincere convictions of some of its citizens." *Board of Regents of U. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000). Ultimately, "it is the democratic electoral process that first and foremost provides a check on government speech." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207-08 (2015).

In the 1889 Joint Resolution of the General Assembly, which requested that Governor McKinney accept the Lee Monument and the Circle as a gift to the Commonwealth, the General

13

Assembly opined that the monument of the Confederate General served a "patriotic purpose . . . highly appreciated by the General Assembly." The expert witnesses who testified in this case agreed that the Lee Monument was erected in 1890 as a tribute to the Confederacy's "Lost Cause" and as a memorial to the southern white citizenry's continued belief in the virtue of their cause, which defended their pre-Civil War way of life, including the practice of owning humans of African descent as chattel. The Taylor Plaintiffs claim the 1889 Joint Resolution continues to state the public policy of the Commonwealth.

In this case, the Taylor Plaintiffs assert that the Commonwealth of Virginia traded its sovereign right to control its government speech, regarding the Lee Monument, in perpetuity, in exchange for the gift to the Commonwealth of the monument and the land on which it was erected. They further claim that the 1889 Joint Resolution concerning the gift is "binding" on the Commonwealth, and that Governor Northam's order to remove the Lee Monument from the Circle violated the 1889 Joint Resolution, and was therefore unconstitutional. They also claim that they are the beneficiaries of enforceable restrictive covenants, created by language in the 1887 Deed and in the 1890 Deed, which facilitated the donation of the Lee Monument and the Circle to the Commonwealth. Based on their status as beneficiaries of those restrictive covenants, they assert that they have the right to prohibit the Commonwealth from moving its monument, the Lee Monument, from its property, the Circle. In other words, they claim to have the authority to control the Commonwealth's governmental speech, as expressed by the presence of the Lee Monument on the Circle.

The Taylor Plaintiffs insist that the circuit court erred when it relied upon the public policy expressed in the 2020 Budget Amendment passed by the General Assembly in concluding that the restrictive covenants in the 1887 Deed and the 1890 Deed are unenforceable, because the

14

2020 Budget Amendment is unconstitutional and thus cannot replace the public policy stated in the 1889 Joint Resolution. They argue that the 1887 Deed and the 1890 Deed create enforceable restrictive covenants because the language of the 1887 Deed and the 1890 Deed are consistent with the public policy expressed in the 1889 Joint Resolution, which is the current public policy of Virginia, if the 2020 Budget Amendment is not a legally valid enactment, and that the circuit court erred in not granting them summary judgment on their claim.

The Governor responds that the 1887 Deed and the 1890 Deed did not create a valid property interest because the language in the 1890 Deed is ambiguous and did not create a restrictive covenant.[4] The Governor also notes that the property interest described in the 1887 Deed and the 1890 Deed is unknown in law, inasmuch as "plaintiffs claim that they possess something that could perhaps most accurately (but paradoxically) be called an 'affirmative negative easement:' a right to compel the government to use land that it owns in one single way in perpetuity." The Governor avers that the Taylor Plaintiffs "identify no case in which such a purported agreement has ever been enforced against any Virginia property owner—much less against the sovereign."

Additionally, the Governor argues that the 2020 Budget Amendment is constitutional and that it clearly and succinctly defeats all of the Taylor Plaintiffs' claims, but even if the 2020

---

[4] The Governor claims that nothing in the 1890 Deed suggested that the Commonwealth was taking title subject to a sweeping restriction that could be judicially enforced by private parties. Rather, they assert that the 1890 Deed stated that the Commonwealth executed the deed "in token of her acceptance of the gift and of her guarantee that she will hold said Statue and pedestal and Circle of ground perpetually sacred to the Monumental purpose to which they have been devoted and that she will faithfully guard it and affectionately protect it," which is merely precatory language. According to the Governor, by presenting no evidence on this point at trial, the Taylor plaintiffs failed to establish—based on historical evidence, customary language use, or real property law—that those precatory (and inherently ambiguous) words indefinitely bind the Commonwealth "by definite and necessary implication." *Shepherd v. Conde*, 293 Va. 274, 288 (2017).

15

Budget Amendment is not considered, the restrictive covenants are still unenforceable because enforcement of the restrictive covenants would contradict public policy and be unreasonable in light of changed circumstances.

"It is well-settled that [this Court] reviews questions of law de novo, including those situations where there is a mixed question of law and fact." *Napper v. ABM Janitorial Servs-Mid Atl., Inc.*, 284 Va. 55, 61 (2012) (internal quotation marks omitted).

"We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong [or a different] reason given, to sustain the result and assign the right ground." *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)) (alteration omitted). Furthermore, we are not "limited to the grounds offered by the trial court in support of its decision[;]" rather, we are "entitled to affirm the court's judgment on alternate grounds, *if such grounds are apparent from the record.*" *Perry v. Commonwealth*, 280 Va. 572, 582 (2010) (emphasis in original); *see Spinner v. Commonwealth*, 297 Va. 384, 391 (2019).

"Covenants, express or implied, which restrict the free use of land, are not favored and must be strictly construed." *Sloan v. Johnson*, 254 Va. 271, 274 (1997). Courts will only enforce restrictions on the use of land where the intentions of the parties are clear and the restrictions are reasonable. *Scott v. Walker*, 274 Va. 209, 212-13 (2007); *Stevenson v. Spivey*, 132 Va. 115, 119 (1922). Enforceable restrictions on the use of property may become unenforceable because of changed circumstances or because the restriction violates public policy. *See Duvall v. Ford Leasing Dev. Corp.*, 220 Va. 36, 45 (1979).

"The reasonableness of a [restrictive covenant] is to be determined by considering whether it is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Hercules Powder Co.*

16

*v. Continental Can Co.*, 196 Va. 935, 940 (1955). "Hence, in determining the validity of the restriction[,] we must examine its purpose and actual operation under the circumstances and conditions existing when it was imposed as well as at present." *Id.* "The question to be determined is whether or not there has been such a radical change in conditions as to defeat the purpose of the restrictions." *See Ault v. Shipley*, 189 Va. 69, 76 (1949).

The circuit court did not err in denying the Taylor Plaintiffs' request for summary judgment on their restrictive covenant claim. There were questions of fact and law concerning whether the purported covenants were enforceable, and it was proper for the circuit court to consider evidence and arguments concerning whether enforcement of the purported restrictive covenant would be unreasonable and contrary to public policy. *See AlBritton v. Commonwealth*, 299 Va. 392, 410 (2021) (observing that a motion for summary judgment "could succeed only if there [a]re no genuine issues of material fact"); *Shifflett v. Latitude Props., Inc.*, 294 Va. 476, 480 (2017) ("[S]ummary judgment 'shall not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law.") (quoting *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 196 (2017)); *see also Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009) (stating it is "not appropriate" to grant a request for entry of summary judgment where "the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence" presented in connection with the request).

Public policy is defined as "[t]he collective rules, principles, or approaches to problems that affect the [C]ommonwealth or [that] promote the general good," and it more particularly pertains to "principles and standards regarded by the legislature or by the courts as being of fundamental concern to the state and the whole of society." Black's Law Dictionary 1487 (11th

17

ed. 2019). Public policy acts to restrain persons from lawfully performing acts that have "a tendency to be injurious to the public welfare." *Wallihan v. Hughes*, 196 Va. 117, 124 (1954) (quoting 12 Am. Jur. *Contracts* § 169 (1938)); *see* Black's Law Dictionary 1487 (11th ed. 2019). We recognize that "no fixed rules can be given by which to determine what is public policy." *Wallihan*, 196 Va. at 124-25. In fact, "[t]he very reverse of that which is public policy at one time may become public policy at another time." *Id.* at 124.

The applicable public policy for a given time may be gathered from the enactments of the legislative branch, the expressions of the executive branch, and the opinions of this Court. *Howell v. McAuliffe*, 292 Va. 320, 326 (2016); *Knight v. Peoples Nat. Bank of Lynchburg*, 182 Va. 380, 392 (1944). We have previously explained, however, that

> The dominant role in articulation of public policy in the Commonwealth of Virginia rests with the elected branches. The role of the judiciary is a restrained one. Ours is not to judge the advisability or wisdom of policy choices. The Executive and Legislative Branches are directly accountable to the electorate, and it is in those political venues that public policy should be shaped.

*Howell*, 292 Va. at 326; *cf. Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc.*, 291 Va. 269, 280 (2016) (declaring that this Court has no authority to judge the wisdom or propriety of a statute because, as between the legislature and the judiciary, "the legislature, not the judiciary, is the sole 'author of public policy'"); *cf. also Knight*, 182 Va. at 392 (emphasizing that the public policy of the Commonwealth is "found in the Acts of the General Assembly and the opinions of this [C]ourt," and it is not based on the authorities from other jurisdictions).

The only evidence presented by the Taylor Plaintiffs supporting their claim, regarding the relevant public policy in Virginia and the reasonableness of the restrictive covenants, is the 1889 Joint Resolution of the General Assembly. A joint resolution is a legislative enactment of the two houses of the General Assembly that "expresses legislative opinion or sentiment on a

18

particular issue." Virginia General Assembly, Legislative Essentials, https://virginiageneralassembly.gov/ (last visited August 3, 2021). In Virginia, a joint resolution is distinguishable from a statute because a joint resolution does not have the force of law and does not require the Governor's signature. *Id.*; *National Ass'n for Advancement of Colored People v. Comm. on Offenses Against Admin. of Justice*, 201 Va. 890, 897 (1960) (distinguishing a joint resolution from a statute by stating that a joint resolution is not a law); 73 Am. Jur. 2d *Statutes* § 2 (2021). While public policy may be deduced from legislative enactments, such as a joint resolution, the expression of public policy in a joint resolution will not have the same legal effect as the expression of public policy in an enforceable statute because a joint resolution is not law. *See City of Charlottesville v. DeHaan*, 228 Va. 578, 583 (1984); *National Ass'n for Advancement of Colored People*, 201 Va. at 897.

The Taylor Plaintiffs also claim that the circuit court erred in not granting them summary judgment on their claim that the 1889 Joint Resolution was "binding" on the Governor. However, there is no authority cited in support of the Taylor Plaintiffs' claim that the 1889 Joint Resolution is binding law concerning the authority of the Governor or General Assembly to move the Lee Monument. The joint resolution is not a statement of law, but merely a request by the 1889 General Assembly to the Governor in 1889, asking him to accept a gift that had been offered to the Commonwealth by the Lee Monument Association. The request and the opinions expressed in the 1889 Joint Resolution passed by the General Assembly did not create any binding law, which could be violated by anyone. At most, a property right was created by the terms of the donative 1890 Deed signed by then Governor McKinney.

Although the 1890 Deed, which was signed by then Governor McKinney, as requested by the General Assembly, may be evidence of the public policy that Governor McKinney and the

19

General Assembly desired to express in 1889 and 1890, it is not a law. It is not dispositive of the Commonwealth's public policy in 1889, 1890, or today, whether or not the 1889 Joint Resolution was expressly repealed by the 2020 Budget Amendment. The 1889 Joint Resolution is merely one item of evidence that may be considered in discerning the Commonwealth's public policy.

The circuit court reviewed the law and the evidence presented to it. The circuit court did not err in denying the Taylor Plaintiffs' request for summary judgment on their claim that the 1889 Joint Resolution was binding on the Governor and that it, as a matter of law, expressed the public policy of the Commonwealth. The circuit court rightfully considered the evidence offered by the Governor concerning indicia of the previous and current public policy in the Commonwealth with respect to Confederate monuments in discerning whether public policy, reasonableness, and changed circumstances were sufficient for it to determine that the restrictive covenants purportedly entered into in 1890 were not enforceable. We conclude that there is ample evidence that enforcement of the purported restrictive covenants would violate public policy and be unreasonable, given the change in circumstances since 1890, even if the 1889 Joint Resolution was not repealed by the 2020 Budget Amendment.

The circuit court took judicial notice of other legislative actions, in addition to the 2020 Budget Amendment, which evidence the General Assembly's public policy concerning the preservation of Confederate monuments and which overtly indicate the General Assembly's attempts to move away from honoring General Lee's role in defending the Confederacy against the Government of the United States. The circuit court's judicial notice of the recently-passed statute eliminating the state holiday honoring General Lee as a defender of the cause of Virginia, as well as the City of Richmond's and the General Assembly's recent removals of other

Confederate monuments and statues, support the circuit court's conclusion that the Commonwealth has passed legislation which indicates that it no longer wishes to express symbolic celebrations of the Confederacy in perpetuity.

Also, other circumstances and conditions existing at the time the 1890 Deed was signed have radically changed. As the Governor's expert witnesses testified, the Lee Monument was erected as a symbol of defiance to Reconstruction, and as an unapologetic statement regarding the continued belief in the virtue of the "Lost Cause" and in the Confederacy's pre-Civil War way of life, including the subjugation of people of African descent. The post-Reconstruction proliferation of Confederate monuments was contemporaneous with and closely related to the passage of racially discriminatory policies, such as those included in the 1902 Constitution of Virginia. However, over the last 130 years, enforcement of the principles derived from the Reconstruction Amendments of the United States Constitution[5] has led to the invalidation of many public policies that emerged contemporaneously with and related to the post-Reconstruction erection of Confederate monuments, such as the Lee Monument. In 1918, following the U.S. Supreme Court's holding that an ordinance barring African American people from owning property in particular locations was unconstitutional, this Court held that the City of Clifton Forge's residential segregation ordinance, as well as the materially identical ordinance of the City of Richmond, was not valid. *Irvine v. City of Clifton Forge*, 124 Va. 781, 782 (1918); *see Buchanan v. Warley*, 245 U.S. 60, 82 (1917) (applying the Fourteenth Amendment). In 1948, the U.S. Supreme Court unanimously ruled that the judicial enforcement of racially

---

[5] *See, e.g., United States v. Hatch*, 722 F.3d 1193, 1196-97 (10th Cir. 2013) (identifying the Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution of the United States as the "Reconstruction Amendments," which were approved and ratified following the end of the Civil War).

21

restrictive covenants—similar to the restrictions advertised by the developers near Monument Avenue—violates the Equal Protection Clause. *Shelley v. Kraemer*, 334 U.S. 1, 19-20 (1948). In 1954, the U.S. Supreme Court struck down as unconstitutional policies requiring racial segregation in public schools; the ruling included consideration and rejection of the 1902 Constitution of Virginia's mandate requiring racial segregation of children in public schools. *Brown v. Board of Educ.*, 347 U.S. 483, 486 n.1, 495 (1954); *see* Va. Const. art IX, § 140 (1902). In 1967, the U.S. Supreme Court, with one voice, invalidated Virginia's anti-miscegenation law because it was "designed to maintain White Supremacy" and served "no legitimate overriding purpose independent of invidious racial discrimination," *Loving v. Virginia*, 388 U.S. 1, 11 (1967). Further, in 1971, the Commonwealth replaced the 1902 Constitution with a Constitution that expressly forbids racial discrimination. *See* Va. Const. art. I, § 11. There is little doubt that relevant circumstances, conditions, and public policies have changed since 1890.

The Lee Monument has been, and continues to be, an act of government speech. The Commonwealth's ownership of the Lee Monument and its display thereof on state-owned property elevates the display of the Lee Monument to a form of government speech. This means that any symbolism associated with the Lee Monument, whether its historical and social significance changes over time, is a message endorsed by the government. The Governor's evidence shows that at the time that the Commonwealth accepted the Lee Monument, the Lee Monument was a tribute to the southern citizenry's pre-Civil War way of life. The record further shows, however, that at present, the Commonwealth's continued display of the Lee Monument communicates principles that many believe to be inconsistent with the values the Commonwealth currently wishes to express.

The merits of the arguments for and against the retention of the Lee Monument in its present location are for the political branches to consider. Our function as a Court is to address the legal claims before us. The essence of our republican form of government is for the sovereign people to elect representatives, who then chart the public policy of the Commonwealth or of the Nation. Democracy is inherently dynamic. Values change and public policy changes too.

The Government of the Commonwealth is entitled to select the views that it supports and the values that it wants to express. *See Pleasant Grove City*, 555 U.S. at 467-68. The Taylor Plaintiffs erroneously assert that the Commonwealth is perpetually bound to display the Lee Monument because of the 1887 Deed, the 1890 Deed, and the 1889 Joint Resolution.

A restrictive covenant against the government is unreasonable if it compels the government to contract away, abridge, or weaken any sovereign right because such a restrictive covenant would interfere with the interest of the public. *See Hercules Powder Co.*, 196 Va. at 940; *see also Mumpower v. Housing Auth. of City of Bristol*, 176 Va. 426, 452 (1940). "[T]he State cannot barter away, or in any manner abridge or weaken, any of those essential powers which are inherent in all governments, and the exercise of which in full vigor is important to the well-being of organized society." *Mumpower*, 176 Va. at 452. "[C]ontracts to that end are void upon general principles," and they cannot be saved from invalidity by the constitutional prohibition against laws that impair the obligation of contracts. *Id.*

Governor McKinney had no power to contract away the Commonwealth's essential power of freedom of government speech in perpetuity by simply signing the 1890 Deed. *See id.* Similarly, the General Assembly of 1889 had no authority to perpetually bind future administrations' exercise of government speech through the simple expedient of a joint

23

resolution authorizing the 1890 Deed. *See Pleasant Grove City*, 555 U.S. at 468 ("A government entity may exercise this same freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message."); *Terry v. Mazur*, 234 Va. 442, 456-57 (1987) (holding that a legislative act "that infringes upon the right of subsequent General Assemblies to repeal or amend legislation is repugnant to Article IV, § 15 [of the Constitution of Virginia]"). The Commonwealth has the power to cease from engaging in a form of government speech when the message conveyed by the expression changes into a message that the Commonwealth does not support, even if some members of the citizenry disagree because, ultimately, the check on the Commonwealth's government speech must be the electoral process, not the contrary beliefs of a portion of the citizenry, or of a nineteenth-century governor and legislature.

Therefore, any restrictive covenant purportedly created through the 1890 Deed, which would prevent the Commonwealth from moving a monument owned by the Commonwealth and on property owned by the Commonwealth is unenforceable because, at its core, that private property interest is the product of a nineteenth-century attempt to barter away the free exercise of government speech regarding the Lee Monument in perpetuity.

The government's right to free speech is an essential power inherent in all governments, and that agreement, entered by Governor McKinney signing the 1890 Deed as authorized by the General Assembly, is unenforceable. The circuit court also did not err in holding that any restrictive covenants created by the 1887 Deed or the 1890 Deed, as applied to the Commonwealth, are unenforceable because they contradict current public policy and are unreasonable, even without considering the effect of the 2020 Budget Amendment on the enforceability of those covenants.

B.

The circuit court did not err in failing to grant the Taylor Plaintiffs' summary judgment on their constitutional claims because the 1889 Joint Resolution was not binding on the Governor, and the Governor did not violate the Constitution of Virginia in ordering the removal of the Lee Monument from the Circle. *See* discussion *infra* pp. 19-20.

Additionally, we find no merit in the Taylor Plaintiffs' assertion that the circuit court's invalidation of the 1887 Deed and the 1890 Deed contradicted the Commonwealth's public policies concerning historic preservation, which are expressed in Article XI, §§ 1 and 2 of the Constitution of Virginia, the Open-Space Land Act, and the legislative mandate of the Department of Historic Resources. Contrary to the Taylor Plaintiffs' assertion, those statutes actually support a public policy recognizing the Commonwealth's and the Governor's authority to remove government-owned memorials from government-owned property. *See* Code § 2.2-2402(B) (recognizing that the Governor is the final authority with respect to the removal of government-owned memorials erected on government-owned land); Code § 10.1-2202.3(A) (providing the Department of Historic Resources' duty to review the maintenance of state-owned historic properties and requiring its consideration of the broad public interest in the property, "tak[ing] into account other public interest considerations," such as "community values and comments"); Code § 10.1-1702(A)(7) (authorizing public bodies, through the Open-Space Land Act, to demolish or dispose of structures inconsistent with the use of real property as open space land). The circuit court did not abuse its discretion or err in failing to rule in favor of the Taylor Plaintiffs regarding that issue.

25

CONCLUSION

Assuming *arguendo* that the Taylor Plaintiffs are correct in claiming that the language in the 1887 Deed and the 1890 Deed created restrictive covenants, those restrictive covenants are unenforceable as contrary to public policy and for being unreasonable because their effect is to compel government speech, by forcing the Commonwealth to express, in perpetuity, a message with which it now disagrees. For the reasons stated, we hold that the circuit court did not err in concluding that the purported restrictive covenants are unenforceable, that Governor Northam's order to remove the Lee Monument did not violate the Constitution of Virginia, and that all of the Taylor Plaintiffs' claims are without merit. Accordingly, we will affirm the judgment of the circuit court and immediately dissolve all injunctions imposed by the circuit court.

*Affirmed.*